**William W. ROMINE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–84–00726–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 11, 1986.

Rehearing Denied Jan. 8, 1987.

Dan B. Gerson and Henry L. Burkholder, III, Houston, for appellant.

John B. Holmes, Jr., J. Harvey Hudson and Russel Turbeville, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ROBERTSON, JJ.

## OPINION

ROBERTSON, Justice.

This is an appeal from a conviction for misapplication of fiduciary property. The jury rejected appellant's plea of not guilty and assessed punishment at confinement for ten years, for which it recommended probation, and a fine of ten thousand dollars. Appellant presents twelve points of error which are grouped into complaints concerning: (1) the indictment, (2) the sufficiency of the evidence, (3) the restitution order and (4) the verdict. We affirm.

The evidence shows appellant had worked in the insurance business for a number of years and in 1974 the company he was working for began selling Individual Retirement Accounts (IRA's). In 1980 he desired to sell IRA's on his own, and believing that "an institution other than an insurance company could do a better job servicing an IRA primarily because of the restrictions placed on insurance companies by statutes," he located and purchased a "1303–B charter trust company" which had been established in 1954 but had been inactive for some years. Appellant reactivated the company under the name "American Bankers Trust Company" (ABT). In September 1980 appellant began offering IRA's for sale through ABT. Until enjoined from further sales in late 1982, approximately 3500 persons had purchased IRA's from appellant's company for a total sum of nearly $3,736,000. In the beginning, appellant acted as ABT's only salesman. In fact, he personally made all of the sales alleged in the indictment and proven at trial.

The allegations in the indictment concerned the purchase by four separate individuals (Delia Assolin,[1] Wanda Meyer, Eric T. Luker and Carl F. Norman) of IRA's from appellant. The jury was warranted in finding that in offering the IRA's for sale to the purchasers, appellant first telephoned a prospective customer. When invited, he personally called upon the prospective customer telling them he represented ABT and that "they were setting up individual retirement accounts." He would then explain the benefits of such an account, including the amount of money the purchaser would have at the end of a certain period of time and that the amount of money deposited each year was deductible from their Federal Income Tax. He further represented that the interest rate on the IRA's purchased through ABT was the highest available. There was never any discussion of "custodial fees." Each of the persons named in the indictment signed a draft authorization so that monthly payments could be made directly to ABT from their bank account. While appellant had each of the investors sign and initial several documents, the only documents he left with them were a schedule representing what a purchaser of an IRA who continued to make annual payments could have in his account at given ages and a receipt for the money the purchaser paid that day. There-

---

1. The court did not submit to the jury offenses alleged to have been committed against Mrs. Assolin as she was deceased at time of trial and the state agreed to the insufficiency of the evidence position urged by appellant, stating that they were unable to prove lack of her consent.

after, appellant mailed each purchaser a packet of papers. Within that packet was a form which each purchaser had signed at the meeting with appellant, acknowledging that the "custodial fees" for ABT were 80% of the first year deposits, 2% of the deposits of years two through ten and 1% each year thereafter. It was shown that none of the purchasers of the IRA's realized they had signed such an agreement and would not have knowingly done so.

It was shown that ABT was not authorized by the Internal Revenue Service or the Treasury Department to act as a non-bank trustee or custodian of individual retirement accounts. It was further shown that ABT was not an insured member of the Federal Deposit Insurance Corporation and that the company was not, nor had ever been, "chartered, registered or licensed as a banking institution in Texas."

Finally, banking records covering over two years were introduced into evidence. An audit of the records showed: deposits were made to the ABT account of almost $3,376,000; approximately $690,172.40 of the deposits "was directed to Mr. Romine (appellant) or his family;" approximately $117,000 was returned to investors; a certificate of deposit for approximately $150,000; and that the remainder of the money "went mostly for operating expenses, some personal withdrawals and salaries ... commission, overhead."

In his first point of error appellant contends the court erred in overruling his motion to quash the indictment "on the basis of misjoinder." Citing *Drake v. State,* 686 S.W.2d 935 (Tex.Crim.App.1985) and *Ex parte Siller,* 686 S.W.2d 617 (Tex.Crim. App.1985), appellant argues that the state "may not join in a single indictment two or more separate and distinct statutory penal offenses." For the reasons stated below, we hold those cases inapplicable to the facts of this case.

The indictment contained a total of 190 unnumbered paragraphs. Paragraphs 1 through 62 alleged, alternately, theft and misapplication of fiduciary property belonging to Delia Assolin on thirty-one separate

monthly occasions beginning September 5, 1980, and ending March 5, 1983. Paragraphs 63 through 88 alleged, alternately, theft and misapplication of fiduciary property belonging to Wanda Meyer on thirteen separate monthly occasions beginning July 15, 1981, and ending May 5, 1982. Paragraphs 89 through 144 alleged, alternately, theft and misapplication of fiduciary property belonging to Eric T. Luker on twenty-eight separate monthly occasions beginning October 20, 1980, and ending January 20, 1983. Finally, paragraphs 145 through 190 alleged, alternately, theft and misapplication of fiduciary property belonging to Carl F. Norman on twenty-three separate monthly occasions beginning January 8, 1981, and ending November 20, 1982. The two concluding paragraphs of the indictment alleged:

> And the Grand Jury do further present that all of the amounts alleged above were stolen from the above complainants, DELIA ASSOLIN, WANDA MEYER, ERIC T. LUKER, and CARL F. NORMAN, pursuant to one scheme and continuing course of conduct and the aggregate amount so stolen was over ten thousand dollars.

> And the Grand Jury do further present that all of the amounts alleged above, owned by DELIA ASSOLIN, WANDA MEYER, ERIC T. LUKER, and CARL F. NORMAN, were misapplied, pursuant to one scheme and continuing course of conduct and the aggregate amount so misapplied was over ten thousand dollars.

It is clear that the indictment alleged and the charge required the jury to find that appellant either stole or misapplied the amounts of money in one continuous scheme. Tex.Penal Code Ann. §§ 31.09 and 32.03 (Vernon 1974) state:

> When amounts are obtained in violation of this chapter pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense.

The court of criminal appeals has held that Tex.Penal Code Ann. § 31.09 (Vernon 1974) "creates one offense;" therefore, we hold that aggregation under Tex.Penal Code Ann. § 32.03 (Vernon 1974) likewise creates one offense. *See Brown v. State,* 640 S.W.2d 275 (Tex.Crim.App.1982) and cases cited therein.

█ The indictment, to say the least, is cumbersome in that each paragraph following the first, begins "It is further presented." We believe the more preferable method of pleading an offense the amounts of which are aggregated under Tex.Penal Code Ann. §§ 32.03 or 31.09 (Vernon 1974) is that set forth in *Cashion v. State,* 657 S.W.2d 517 (Tex.App.—Corpus Christi 1983, pet. ref'd). Still further, we believe it would have been more appropriate for the indictment to have alleged in aggregation all the amounts allegedly acquired by theft, followed by a paragraph alleging in aggregation all the amounts allegedly misapplied by a fiduciary.

█ In appellant's words, the basis for his complaint is "that the state has joined theft and misapplication as alternate offenses arising out of the same transaction" which he characterizes as *"two separate offenses."* Appellant then cites Tex.Code Crim.Proc.Ann. art. 21.24(a) (Vernon Supp. 1986),[2] which states that "two or more offenses may be joined in a single indictment ..., with each offense stated in a separate count, if the offenses arise out of the same criminal episode, *as defined in Chapter 3 of the Penal Code."* Finally, appellant quotes the following language of the court of criminal appeals in *Drake:*

> Thus, what the Legislature eliminated in 1973 was authority to charge in a single indictment two or more offenses arising out of the same criminal transaction....
>
> Therefore, we cannot hold that a pleader may allege 'in a single indictment two or more offenses in separate counts if the offenses arise out of the same inci-

dent, act, or transaction, as was alleged in the instant cause.'

*Drake v. State,* 686 S.W.2d at 943. Of course, the distinguishing feature of *Drake* is that the offenses which were there joined in separate counts of a single indictment were attempted capital murder of two separately named police officers, burglary and felony theft. We believe appellant's reliance upon § (a) of art. 21.24, is misplaced.

Art. 21.24 in its entirety, provides:

(a) Two or more offenses may be joined in a single indictment, information, or complaint, with each offense stated in a separate count, if the offenses arise out of the same criminal episode, as defined in Chapter 3 of the Penal Code.

(b) A count may contain as many separate paragraphs charging the same offense as necessary, but no paragraph may charge more than one offense.

(c) A count is sufficient if any one of its paragraphs is sufficient. An indictment, information, or complaint is sufficient if any one of its counts is sufficient.

We believe some historical background is essential for an understanding of the significance of the provisions of sections (a) and (b).

Prior to 1965, the subject article (then codified as Tex.Code Crim.Proc. art. 417 (1924)) provided:

An indictment or information may contain as many counts, charging the same offense, as the attorney who prepares it may think necessary to insert. An indictment or information shall be sufficient if any one of its counts be sufficient.

Cases consistently held that it was not only permissible, but commendable, for the pleader to allege in as many counts as the pleader thought proper the different means

---

**2.** Unless otherwise noted all future citations are to the current version of the Tex.Code Crim. Proc.Ann.

by which *an offense* was committed. *See Wilson v. State,* 189 S.W. 1071 (1916). Perhaps the best explanation of this rule was written by Judge Simkins in *Crawford v. State,* 19 S.W. 766 (1892):

> The object in inserting various counts in an indictment is not to secure separate convictions for as many counts, but to meet the various phases of the testimony; and it is permissible and proper to charge all the felonies which go to make up the offense committed by the defendant, but not to charge offenses committed at different times and in different transactions.... Where two or more felonies are charged in the same indictment, the presumption is they are parts of the same transaction, and are to be sustained by the same evidence; and while they all may be submitted to a jury, there can be but one conviction which, as it were, appropriates the guilty intent which runs through and connects these several acts or offenses and makes them one.

While one could not allege multiple felony offenses in the same indictment, the rule in misdemeanor cases was that separate offenses could be charged in separate counts and all disposed of in one trial and convictions could be had upon all the different offenses. *Ward v. State,* 148 Tex. Cr.R. 186, 185 S.W.2d 577 (1945). However, in 1959 the legislature enacted art. 408a, which prohibited the charging of more than one misdemeanor offense in the same charging instrument.

When the Code of Criminal Procedure was revised in 1965, arts. 417 and 408a were combined to form art. 21.24:

> An indictment, information or complaint may contain as many counts charging the same offense as the attorney who prepares it, acting in good faith, may think necessary to insert, but may not charge more than one offense. An indictment or information shall be sufficient if any one of its counts be sufficient.

Even under this amended version, the court of criminal appeals continued to hold that "an indictment could contain as many counts charging the same transaction as it thought necessary to meet the proof as it transpires and prevent a variance." *Ex parte Easley,* 490 S.W.2d 570 (Tex.Crim. App.1972). In fact, appellant concedes in his supplemental brief that under this amendment "the state could have properly joined appellant's theft and misapplication charges."

When the new penal code was enacted in 1974, it included major changes concerning consolidation and joinder of prosecutions (Chapter 3). It authorized, for the first time, the prosecution of the defendant "in a single criminal action for all offenses arising out of the same criminal episode." Tex.Penal Code Ann. § 3.02 (Vernon 1974). The major problem resulted because of the legislature's definition of "criminal episode" as "the repeated commission of any one offense defined in Title 7 of this code (Offenses Against Property)." Tex.Penal Code Ann. § 3.01 (Vernon 1974). Obviously, conforming amendments to the code of criminal procedure had to be made in order for Chapter 3 to be operative. Accordingly, two of the conforming amendments were arts. 21.24 (concerning the charging instrument) and 37.07 (concerning the verdict). Art. 21.24 was amended to read as set out above. Art. 37.07 was amended to provide for a separate verdict on each count where there were multiple counts charging multiple offenses.

From all of the above, we believe it is clear that art. 21.24(*a*) applies *only* to joinder of offenses under Chapter 3 of the Penal Code, and that art. 21.24(*b*) was clearly intended to continue in effect the law as it was prior to the changes necessitated by the enactment of Chapter 3 of the Penal Code in 1974.

Since the amendment of art. 21.24 in 1974, the court of criminal appeals has specifically approved the practice of pleading in multiple paragraphs different ways an offense was committed. This is so even if different offenses are alleged. *See Thomas v. State,* 621 S.W.2d 158 (Tex. Crim.App.1980); *Koah v. State,* 604 S.W.2d

156 (Tex.Crim.App.1980); *See also Foster v. State*, 661 S.W.2d 205 (Tex.App.Houston [1st Dist.] 1983, pet. ref'd); *Reseburg v. State*, 656 S.W.2d 84 (Tex.App.—Tyler 1983, pet. ref'd) *cert. denied* 464 U.S. 985, 104 S.Ct. 431, 78 L.Ed.2d 364 (1983).

■ Much of the confusion in applying the current version of art. 21.24 has resulted from not differentiating a *"count"* from a *"paragraph."* Prior to the 1974 amendment of art. 21.24, *"paragraphs"* did not exist. The proper method of charging different ways of committing *an offense* was multiple *"counts"*. After the 1974 amendment of art. 21.24, the proper method of charging *different ways* of committing an offense was multiple *"paragraphs."* A *"count"* then became the proper method of charging *an offense*. *See Riley v. State*, 658 S.W.2d 818 (Tex. App.—Fort Worth 1983, no pet.).

■ Here, *the offense* appellant was alleged to have committed was the unlawful appropriation of money from the four named individuals. The question was how had he appropriated the money: by theft or by misapplication as a fiduciary? In this case, it was appropriate to allege in multiple *paragraphs* the different ways the offense was committed in order to prevent a fatal variance. Clearly, appellant could not be convicted of both the theft of money and the misapplication of the same money as alleged in the indictment. *Connally v. State*, 696 S.W.2d 432 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd). We hold the trial court did not err in denying appellant's motion to quash and overrule his first point of error.

■ In his second point appellant contends the trial court erred in refusing to quash the indictment because it failed to give him notice of what the agreement was under which he held the money. Each of the paragraphs concerning misapplication alleged appellant misapplied money:

which the Defendant held as a fiduciary, to-wit, as an agent of American Bankers Trust Company, a fiduciary, but not as a commercial bailee, contrary to an agreement between the Defendant, as an agent for American Bankers Trust Company, and [the named complainant], the owner of said property, hereafter referred to as the owner, in a manner that involved substantial risk of loss of the property to the owner.

Appellant argues that *Amaya v. State*, 551 S.W.2d 385 (Tex.Crim.App.1977) is "indistinguishable" from this case and dictates error. We do not agree. In *Amaya* the accused was charged with obtaining welfare payments "by means of a wilfully false statement." As appropriately pointed out in the opinion of the court "appellant was required to make many statements to the Department of Public Welfare; she was entitled, upon proper exception, to know which false statement or statements the State would rely upon for conviction."

We do not recognize a deficiency in the pleading before us. It plainly alleges that appellant held the property in a fiduciary capacity as an agent for ABT and that he misapplied it contrary to an agreement between him, as the agent for ABT, and the owner in a manner that involved substantial risk of loss of the property to the owner. The only deficiency appellant complains of is the failure of the indictment to "specify what the agreement was." Clearly, "the agreement" was the agreement by which appellant obtained the money as a fiduciary. We agree with the state that to require an allegation of "what that agreement was" would require the state to plead its evidence, which of course, is not required. *See Thomas v. State*, 621 S.W.2d 158 (Tex.Crim.App.1980).

■ Further, we agree with the contention of the state that even if the indictment failed to give sufficient notice on its face, appellant has failed to show that he was prejudiced thereby. In *Adams v. State*, 707 S.W.2d 900 (Tex.Crim.App.1986) the court clearly provided the accused who complains of the denial of a motion to quash must show harm. The *Adams* court stated:

The important question is whether a defendant had notice adequate to prepare

his defense. The first step in answering this question is to decide whether the charging instrument failed to convey some requisite item of "notice". If sufficient notice is given, this ends our inquiry. If not, the next step is to decide whether, in the context of the case, this had an impact on the defendant's ability to prepare a defense, and, finally, how great an impact.... The Court of Appeals in the instant case was correct to review the record.

*Id.* at 903. Here, the record shows that appellant clearly knew which agreement the indictment alleged and he thoroughly cross-examined all witnesses about the agreement. The court properly overruled the motion to quash; therefore, appellant's point of error is overruled.

In his third point of error appellant contends the trial court erred in overruling his motion to quash because the indictment failed to further specify the manner or means by which appellant "exposed property to a substantial risk of loss." For the same reasons as discussed above in appellant's second point of error, this point of error is overruled.

In his fourth point of error appellant contends the evidence is insufficient to sustain the conviction because there was "no showing that appellant every [sic] acquired cash or currency belonging to any of the complaining witnesses." We do not agree with appellant's view of the evidence and, accordingly, hold the evidence sufficient against this attack.

The court of criminal appeals expressly rejected appellant's argument in *Powell v. State,* 549 S.W.2d 398, 401 (Tex.Crim.App. 1977). There, the court stated: "Modern financial transactions often effect transfer of money without physical delivery of coin or paper currency." In this case, a brief review of the evidence shows that appellant personally sold the IRA plan to each of the persons named in the indictment. Each of the named complainants executed the necessary documents so that appellant could, and did, receive by drafting the bank account of each complainant a monthly investment from each complainant. Each complainant testified as to the total amount of money each one had lost as a result of the investment in IRA's through appellant. The state then introduced evidence to show that appellant had control of the ABT bank account. Further, the state showed the account was, in effect, a funnel through which funds were transferred for appellant's personal benefit or used as exorbitant operating expenses for ABT. We find this evidence sufficient to show that appellant received "money belonging to the complaining witnesses." Appellant's fourth point of error is overruled.

In his fifth, sixth and seventh points of error, appellant contends the evidence is insufficient to sustain the conviction because: (1) the state failed to prove what agreement appellant had breached; (2) the state failed to prove that appellant breached any agreement between he and the complainants; and (3) there was no evidence that appellant dealt with the complainant's property in such manner as to pose a substantial risk of loss to the property. Again, we do not agree.

It is clear that we must view the evidence in the light most favorable to the verdict and if any rational trier of fact could have found guilt beyond a reasonable doubt, the evidence is sufficient. The jury had before it abundantly sufficient evidence that but for the representations made by appellant that their funds would be invested in "jumbo CD's"; that their investments would earn interest at the rate of five percent over treasury bills; that the funds would be invested in FDIC insured accounts and other similar representations, none of the complainants would have given appellant the monies alleged. These representations, along with the evidence concerning appellant's failure to carry out the investments promised and his squandering of their money are sufficient evidence to sustain the jury verdict. Appellant's points of error contesting the sufficiency of the evidence are overruled.

■ In appellant's eighth through eleventh points of error he complains of the trial court ordering restitution payments as a condition of probation. Specifically, in his eighth point of error appellant contends the court erred in ordering restitution to Mr. Assolin, the husband of the complainant named in the first sixty-two paragraphs of the indictment. At the time of trial Mrs. Assolin was deceased. Mr. Assolin testified about certain facts surrounding the alleged offense and the amount of money lost. At the close of the state's case the trial court granted an instructed verdict as to all paragraphs wherein Mrs. Assolin was the complainant. Appellant argues the instructed verdict amounts to an acquittal of appellant as to these offenses and the trial court was without authority to order restitution. We do not agree.

■ Appellant correctly points out that the decision to order restitution as a condition of probation lies within the sound discretion of the trial court. *Cartwright v. State*, 605 S.W.2d 287 (Tex.Crim.App.1980); Tex.Code Crim.Proc.Ann. art. 42.12, § 6(a) (Vernon Supp.1986). The court is not limited to, but rather guided by, the terms and conditions of probation enumerated in art. 42.12, § 6(a). One of the possible conditions is for the probationer to "make restitution or reparation in any sum that the court shall determine." Nowhere in the statutory language does the legislature provide that restitution is to be made only to "victims" of crimes. The only limitation on restitution is the due process requirement that the sum ordered to be paid be "just." In other words, there must be sufficient evidence in the record to support the order. *Cartwright v. State*, 605 S.W.2d at 289.

More recently, in *Gordon v. State*, 707 S.W.2d 626 (Tex.Crim.App.1986), the court of criminal appeals again addressed the issue of restitution payments ordered by a trial court as a condition of probation. In pointing out that the federal statute is more restrictive than our state statute, the court stated:

The Texas statute, by contrast, does not expressly limit the restitution a probationer may be ordered to pay to payment (sic) for losses caused only by the offense for which he was convicted. Article 42.12 § 6(a)(8) supra. Given this lack of express limitation, we are called upon in the instant case to interpret the scope of the statute.

*Id.* at 628. There, the court concluded the trial court incorrectly ordered restitution when the accused had been found *not criminally responsible* for the offense for which the restitution payments were to be made. Here, appellant was found guilty of misapplication of fiduciary funds. Where, as here, the trial court has heard evidence which was totally consistent with evidence from the other named complainants we find the trial court did not abuse the discretion in ordering restitution to Mr. Assolin. Appellant's eighth point of error is overruled.

■ In his ninth point of error appellant contends the court abused its discretion in ordering appellant to make restitution payments to six named persons "where there was no competent evidence ... that [they] sustained the loss alleged by the state." The record of the proceedings at the restitution hearing indicates that the prosecutor produced a list containing the names of fourteen people who had purchased IRA's directly from appellant. The list included the amount of money invested and subsequently lost, and a request that the court order restitution in the amount indicated to each named investor. Although the record is not clear, none of the six named individuals testified at the trial, or at the restitution hearing. Appellant's hearsay objection to the introduction of the list was overruled.

Recently, in *Harrison v. State*, 713 S.W.2d 760 (Tex.App.—Houston [14th Dist.] 1986) we held that unobjected to hearsay was sufficient to sustain a probation restitution order. *See also Jones v. State*, 713 S.W.2d 796 (Tex.App.—Tyler 1986). After reviewing the testimony of Wanda Meyer we find sufficient evidence in the record to sustain the order of restitu-

tion to Harry Collins, Michael Meyer and Donald Meyer. However, in view of appellant's objection, we find there is no factual basis to sustain the restitution order as to the other individuals who did not testify. The restitution order as to Carol Ann Maryott, Richard Louis Ramirez, and Mary Ann Tombs is deleted from the terms of probation. *Rodriguez v. State*, 710 S.W.2d 167 (Tex.App.—San Antonio 1986); *Cartwright v. State*, 605 S.W.2d at 289. As reformed, appellant's ninth point of error is overruled.

■ In his tenth point of error appellant contends the court abused its discretion in ordering restitution "to persons other than those named in the indictment as complaining witnesses." In addition to the four persons named in the indictment, three other persons (Robert Pruitt, Howard White and Wilson Strickland) testified at trial about the IRA's they purchased directly from appellant and their loss. The trial court ordered appellant to make restitution to each as a term of probation.

Consistent with our discussion of his eighth point, we hold the trial court did not abuse its discretion in ordering restitution payments to these persons even though they were not named as complainants in the indictment. As previously pointed out, art. 42.12 does not restrict restitution payments for losses caused only by the offense for which he was convicted, as does the statute governing restitution orders for parolees. *Compare Bruni v. State*, 669 S.W.2d 829, 836 (Tex.App.—Austin 1984). Each of the persons testified and provided a sufficient factual basis for the restitution order. Appellant's tenth point of error is overruled.

■ In his eleventh point of error appellant complains that the trial court "abused its discretion in ordering interest to be paid in addition to the actual amount of the loss as restitution." For the same reasons discussed in appellant's eighth point of error we cannot hold the requirement that the amount to be restored bear interest at the rate of 8% per annum to be an abuse of the broad discretion which the statute vests in the trial court. *See Rodriguez v. State*, 710 S.W.2d at 169. Accordingly, appellant's eleventh point of error is overruled.

■ Finally, in his twelfth point appellant contends the court erred in accepting a jury verdict which was incomplete because the jury had not specified the duration of probation. The verdict of the jury read:

"We the Jury, having found the defendant guilty of misapplication of fiduciary funds, assess his punishment at confinement in the Texas Department of Corrections for 10 years and further find that the defendant has never before been convicted of a felony in this state or any other state and recommend probation of the sentence and assess a fine in the amount of $10,000.00 and we also recommend that the fine not be probated but paid."

Appellant argues that the jury did not "determine the length of the probationary period" and the court therefore erred in assessing a probationary period of ten years. On a record factually identical to the one before us, the court of criminal appeals decided the issue contrary to appellant's contention. *Bridges v. State*, 664 S.W.2d 98 (Tex.Crim.App.1984). Appellant's final point of error is overruled.

As reformed, the judgment of the trial court is affirmed.

---

MURPHY, Justice, dissenting.

I respectfully dissent. To reach their result, the majority views the appellant as having been charged with one offense. They write:

Here the *offense* appellant was alleged to have committed was unlawful appropriation of money from the four named individuals. The question was how had he appropriated the money: by theft or by misapplication as a fiduciary? In this case, it was appropriate to allege in multiple *paragraphs* the different ways the offense was committed in order to prevent a fatal variance.

The offenses of theft and misapplication of fiduciary property are *two* separate and distinct offenses under Title Seven of the Penal Code. *See id.* at § 31.03 (theft) and § 32.45 (misapplication of fiduciary property).

Tex.Code Crim.Proc.Ann. art. 21.24(a) (Vernon Supp.1986), allows the state to join two offenses in a single charging instrument if they arise out of the same criminal episode. According to Chapter Three of the Texas Penal Code, criminal episode means the repeated commission of any *one* offense defined in Title Seven of the code. *See* Tex.Pen.Code Ann. § 3.01 (Vernon 1974).

Therefore, the two offenses both defined in Title Seven, cannot be joined in a single charging instrument. *See e.g., Jordan v. State,* 552 S.W.2d 478, 479 (Tex.Crim.App. 1977) (Burglary and theft); *Keimig v. State,* 669 S.W.2d 121, 124 (Tex.App.— Houston [14th Dist.] 1983, pet. ref'd) (auto theft and burglary).

The statement, quoted above, that appellant was charged with one offense reveals the flaw in the majority's position. "Here the offense appellant was alleged to have committed was *unlawful appropriation of money* ...." The offense of theft is defined in Tex.Pen.Code Ann. § 31.03(a) (Vernon Supp.1986): A person commits an offense if he *unlawfully appropriates property* with intent to deprive the owner of property. The offense of misapplication of fiduciary property is defined in Tex.Pen. Code Ann. § 32.45(b) (Vernon 1974): A person commits an offense if he intentionally, knowingly or recklessly misapplies property he holds as a fiduciary or property of a financial institution in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held.

According to the majority, appellant was charged, in effect, with theft and the state alleged that he committed that offense by theft or misapplication of fiduciary property. I believe this was improper. Theft and misapplication of fiduciary property are different offenses. The elements of the offenses are different. Furthermore, the two offenses fall under different chapters of the penal code: theft offenses are found in chapter thirty-one and misapplication of fiduciary property is found in chapter 32, Fraud, subchapter D, Other Deceptive Practices. It was improper for the state to allege both offenses in a single charging instrument.

The question then becomes whether the trial court's error mandates reversal. This issue was raised by the court of appeals in *Sifford v. State,* 704 S.W.2d 571, 573 (Tex. App.—Corpus Christi 1986, no pet.) and by the Court of Criminal Appeals in *Callins v. State,* No. 69,023 (Tex.Crim.App. July 2, 1986) (not yet reported). In *Sifford,* the state improperly joined in one indictment, robbery and aggravated sexual assault. *See Sifford v. State,* 704 S.W.2d at 575. Sifford's motion to quash the indictment was overruled and the court of appeals found the error was reversible. *See Sifford v. State* at 573.

> [H]arm ... resulted from (1) the reading of the formal charging of both crimes before the jury which required [appellant] to plead not guilty to both offenses; (2) the voir dire; and (3) the state's opening statement.... The jury was ... allowed to consider that the appellant was on trial for two separate felony offenses, each arising from a separate penal statute, rather than merely the one that the state elected to pursue to verdict.

*Sifford v. State* at 573.

The court in *Sifford* further stated that to allow the state's violation of art. 21.24(a) to be cured by the state's election to submit only one offense to the jury would sanction the state's disregard of art. 21.24(a) and render that article meaningless.

This last observation by the court of appeals indicates an intention to find reversible error whenever an indictment which improperly joins multiple offenses is allowed to stand over a defendant's objection. The Court of Criminal Appeals in *Callins v. State,* No. 69,023 (Tex.Crim.App. July 2, 1986), reached the same result as that in *Sifford.* In *Callins,* the state im-

properly joined one count of capital murder with two counts of aggravated robbery in one indictment. *See id.* In reversing the conviction, the court held:

> If a trial court fails altogether to require the State to cure its misjoinder, whether by denying a motion to quash the indictment or by denying a motion to force an election, an appellate court must reverse the conviction. To do otherwise would allow the State to disregard the implicit pleading restrictions of Article 21.24, *supra* and thereby obtain multiple convictions from a single indictment in the face of a defendant's protestations. Allowing such a result would thereby do violence to [the defendant's] rights to an election. [Citation]

*Id.*

Based on the holdings in *Sifford* and *Callins*, I would find that the misjoinder in appellant's indictment was reversible error.