# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 11, 2012

Lyle W. Cayce
Clerk

No. 10-40338

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

HELIODORO HERNANDEZ CABRERA,

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Texas
U.S.D.C. No. 5:09-CR-696-1

Before KING, HIGGINBOTHAM, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Heliodoro Hernandez Cabrera ("Hernandez") appeals his sentence entered upon a plea of guilty to illegal reentry after deportation. His sole substantive appellate issue is whether his prior Texas conviction for "attempted deadly conduct" constitutes a "crime of violence" for purposes of a 16-level enhancement of his Guidelines sentence calculation.[1] *See* U.S.S.G. § 2L1.2(b)(1)(A)(ii) & cmt.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Hernandez also argues the prior conviction was not a "crime of violence" because the meaning of "attempt" under Texas law is broader than the federal meaning of "attempt." He

No. 10-40338

n.1(B)(iii) (2009).  Because the relevant state-court documents do not clearly show that Hernandez was convicted of a crime of violence, we VACATE and REMAND for resentencing in accordance with this opinion.

## I.  Facts and Standard of Review

Pertinent to this appeal, Hernandez pled guilty to illegal reeentry after deportation.  The presentence report ("PSR") enhanced the base offense level of eight by 16 levels, determining that Hernandez's prior conviction was for a "crime of violence."  The PSR calculated an advisory Guideline range of 51-63 months.[2]  Without the 16-level enhancement, the range would likely have been at most 10-16 months.[3]  Hernandez received a 51-month sentence.

Because Hernandez objected to the crime-of-violence enhancement, we apply *de novo* review.  *United States v. Bonilla*, 524 F.3d 647, 651 (5th Cir. 2008); *United States v. Dominguez*, 479 F.3d 345, 347 (5th Cir. 2007).  We address here only whether Hernandez's Texas conviction for "attempted deadly conduct" implicates the residual "use of force" prong of § 2L1.2's definition of "crime of violence," which includes any state-law offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

## II.  Discussion

Hernandez's state-court indictment ("Indictment") charged him with one count of aggravated assault with a deadly weapon and one count of deadly

---

concedes, however, that this argument is foreclosed by our recent decision in *United States v. Sanchez*, 667 F.3d 555, 560-66 (5th Cir. 2012).

[2] The PSR placed Hernandez in criminal history category III and allowed him a two-level reduction for acceptance of responsibility, resulting in a total offense level of 22.

[3] This assumes a criminal history category of III, a four-level enhancement for a prior felony conviction under § 2L1.2(b)(1)(D), and a two-level reduction for acceptance of responsibility, yielding a total offense level of 10.  Upon remand, of course, the Probation Office will need to determine the proper calculation.

No. 10-40338

conduct. *See* TEX. PENAL CODE §§ 22.02 (aggravated assault), 22.05 (deadly conduct). The deadly conduct count alleged that Hernandez had "knowingly discharge[d] a deadly weapon . . . at or in the direction of one or more individuals." The State waived the aggravated assault charge and allowed Hernandez to plead guilty to attempted deadly conduct, without filing a new charging instrument.

Under our precedents, section 22.05 of the Texas Penal Code is not, in its entirety, a "crime of violence." *Compare United States v. Hernandez-Rodriguez*, 467 F.3d 492, 495 (5th Cir. 2006) (concluding that 22.05(b)(1) is a crime of violence and reasoning that the "discharge a firearm at or in the direction of one or more individuals" poses a "real threat of force against [a] person"), *with United States v. Dixon*, 265 F. App'x 383, 385-86 (5th Cir. 2008) (per curiam) (unpublished) (holding, where a defendant charged with aggravated assault pled guilty to attempted deadly conduct, that a generic conviction under section 22.05 is not a crime of violence because subsection (b)(2) "prohibits the knowing discharge 'of a firearm at or in the direction of a habitation, building, or vehicle, with reckless disregard as to whether the habitation, building, or vehicle is occupied'" (citations omitted)), *and United States v. Alfaro*, 408 F.3d 204, 208-09 (5th Cir. 2005) (holding that a defendant's conviction under a Virginia statute similar to subsection (b)(2) is not a crime of violence because it lacks, "as a necessary element, the use, attempted use, or threatened use of force against another" (citing VA. CODE ANN. § 18.2-279)); *see also* Tex. Penal Code § 22.05(a) (lacking a "necessary" force element by requiring only "reckless[] . . . conduct that places another in imminent danger of serious bodily injury"). Accordingly, we must engage in the familiar, but not always simple, "narrowing" process to determine whether Hernandez committed a crime of violence. *See Shepard v. United States*, 544 U.S. 13 (2005); *Taylor v. United States*, 495 U.S. 575 (1990).

No. 10-40338

Precedent circumscribes the type of evidence we can use in the narrowing inquiry. *See, e.g.*, *United States v. Carbajal-Diaz*, 508 F.3d 804, 810 (5th Cir. 2007). "Where a prior conviction results from a guilty plea," as here, we are generally limited to reviewing "'the terms of the charging document, the terms of a plea agreement[,] or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant.'" *Id.* (quoting *Shepard*, 544 U.S. at 26). We may rely on "facts contained in those documents to the extent the 'prior conviction necessarily involved (and a prior plea necessarily admitted) facts equating to'" a crime of violence. *Id.* (quoting *Shepard*, 544 U.S. at 24).

This case thus turns on whether the record contains state-court documents that are susceptible to "narrowing" under *Taylor-Shepard* and, if so, whether the documents prove that Hernandez was convicted of attempted deadly conduct under subsection (b)(1). The parties agree that "*Shepard*-approved" documents exist, but they draw different conclusions from those documents.

The Government largely relies on the Indictment and on language from the first paragraph of a document entitled "Judgment and Sentence of the Court" ("Judgment"). The second count of the Indictment charged Hernandez with firing a weapon at or in the direction of another individual, conduct clearly encompassed by subsection (b)(1). The Judgment notes that the State waived the aggravated assault charge and "proceed[ed] with the 2nd count of the Indictment" and that Hernandez "entere[d] a plea of GUILTY to the charge in the indictment relied upon by the State" (emphasis removed). The Government contends that this shows that Hernandez admitted to attempting to fire a weapon at or in the direction of a person. Because the Guidelines treat attempts to commit crimes of violence the same as completed crimes, the Government argues that Hernandez was convicted of a crime of violence. *See* U.S.S.G. §

4

No. 10-40338

2L1.2 cmt. n.5 ("Prior convictions of offenses counted under [§ 2L1.2(b)(1)] include . . . attempting[] to commit such offenses.").

Hernandez emphasizes two different state-court documents: the "Plea of Guilty, Admonishments, Voluntary Statements, Waivers, Stipulation & Judicial Confession" ("Judicial Confession"), and the cover page to the Judgment in the minute book of the court summarizing the terms of the Judgment and entitled "Judgment on Plea of Guilty Before the Court" ("Record of Judgment"). The Judicial Confession notes that the State originally charged Hernandez with deadly conduct, but "move[d] to reduce the charged offense to: attempted deadly conduct." Hernandez "stipulat[ed]" and "confess[ed]" in the same document that he "committed and [was] guilty of the lesser included offense of: attempted deadly conduct." The Judicial Confession neither elaborates further on the factual basis for Hernandez's plea nor identifies the subsection of the deadly conduct statute that Hernandez attempted to violate. Consonant with the Judicial Confession, the Record of Judgment also specifies only that Hernandez was convicted of attempted deadly conduct.

Our case law is clear. When a charging instrument "charges a crime of which [the defendant] was not convicted, it cannot be used to 'pare down the statute of conviction to determine under which subsection [he] pleaded guilty.'" *Bonilla*, 524 F.3d at 652 (quoting *United States v. Neri-Hernandes*, 504 F.3d 587, 590 (5th Cir. 2007)); *see also United States v. Turner*, 349 F.3d 833, 836 (5th Cir. 2003) ("An allegation in an indictment alone does not [establish the nature of the underlying conduct]. 'Thus, a district court may not rely on a charging document without first establishing that the crime charged was the same crime for which the defendant was convicted.'" (citation omitted)).

It makes no difference that Hernandez was convicted of a lesser included offense. Unless a defendant is reindicted on the pled-to crime or the original indictment specifies the relevant lesser included offense, courts may not rely on

the indictment's factual allegations. *See, e.g.*, *Bonilla*, 524 F.3d at 653 n.4 ("In this case, we have a certificate of disposition that does not refer back to a lesser offense in the original indictment."). Because the Indictment does not list attempted deadly conduct,[4] we cannot use it to establish the nature of Hernandez's conviction. *See Turner*, 349 F.3d at 836; *see also Neri-Hernandes*, 504 F.3d at 589-90 (concluding that the district court erred in relying on an indictment charging the defendant with "assault in the second degree, subsection 2" under New York law—a crime of violence—when the defendant pled guilty to "attempted assault in the second degree" (citation omitted)).

The Government's position, then, necessarily depends on the Judgment, the Record of Judgment, or the Judicial Confession. None of these documents, however, identify the subsection of conviction or allege facts that would support a conviction under subsection (b)(1). The Judicial Confession and Record of Judgment provide only that Hernandez was convicted of attempted deadly conduct.

The Government again points to the Judgment and relies in part on *United States v. Martinez-Vega*, 471 F.3d 559 (5th Cir. 2006). The state-court judgment there specified that the defendant, originally charged with "first degree aggravated sexual assault," *id.* at 562, pled guilty to "sexual assault." *Id.* at 561 (citing TEX. PENAL CODE § 22.011). Reviewing for plain error, we held that the defendant had committed a crime of violence, finding it significant that the judgment provided that the defendant had been convicted of "*the* lesser charge contained in the indictment," sexual assault of a minor. *Id.* at 563. By

---

[4] At oral argument, the Government argued for the first time that section 37.09 of the Texas Code of Criminal Procedure allows us to rely on an indictment's allegations to discern the factual basis for a conviction procured on an unindicted lesser included offense. The Government forfeited this argument by failing to brief it. *See, e.g.*, *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993). In any case, section 37.09 simply defines what offenses constitute lesser included offenses, and no one disputes that attempted deadly conduct is a lesser included offense of deadly conduct.

analogy, the Government argues that the Judgment's reference to the deadly conduct count incorporates the Indictment's allegations into the Judgment, *i.e.*, that Hernandez fired a gun at or in the direction of another person.

We read the Judgment differently than the Government. Although initially referring to the Indictment, the Judgment later clarifies—without mentioning the Indictment—that the court "called" the case again and adjudged Hernandez guilty of attempted deadly conduct. The State may have "proceeded" with and "relied upon" the deadly conduct count, but Hernandez ultimately pled guilty to an offense that was not charged or otherwise enumerated in the Indictment. Other than the Judgment's initial reference to the Indictment's second count, it nowhere alleges facts that permit "narrowing" Hernandez's attempted deadly conduct conviction to a specific subsection.[5]

Moreover, we rejected a similar argument in *Bonilla*, which distinguished *Martinez-Vega* by noting that the lesser included offense there "was *made clear* from the judgment, and was found by the court as actually being charged in the original indictment." *Bonilla*, 524 F.3d at 653 n.4 (emphasis added). The Judgment language here does not "make clear" that it is incorporating parts of the Indictment, which made no mention of attempted deadly conduct. The *Bonilla* court also distinguished *Martinez-Vega* as a plain-error case. *Id.* Under

---

[5] Interestingly, the Judgment specifies that Hernandez was sentenced to 364 days in prison under section 12.44(a) of the Texas Penal Code, which permits a court to "punish a defendant who is convicted of a state jail felony by imposing the confinement permissible as punishment for a Class A misdemeanor." Texas law caps Class A misdemeanor offenses at one year in prison, whereas state jail felonies may be punished by 180 days to two years in prison. *See* Texas Penal Code §§ 12.21 (Class A misdemeanors), 12.35(a) (state jail felonies).

Texas law, however, also provides that defendants convicted of state jail felonies "shall be punished for a third degree felony if . . . a deadly weapon . . . was used or exhibited during the commission of the offense." *Id.* § 12.35(c)(1). Thus, the face of the Judgment provides yet another basis to question whether the facts in the Indictment were ultimately accepted by the court in convicting and sentencing Hernandez.

No. 10-40338

the *de novo* standard of review appropriate here, we are bound to follow *Bonilla*.[6] *Cf. Martinez-Vega*, 471 F.3d at 563 (distinguishing *Turner*, which held that the district court "erred in relying on the indictment because the defendant pleaded guilty to a lesser included offense and was not reindicted on that count," as a case that "was not limited to plain error review" (citing 349 F.3d at 835-36)).

In line with the Record of Judgment and Judicial Confession, furthermore, the Judgment provides that the state court found that Hernandez confessed and pled guilty to committing "attempted deadly conduct." Notably, "'written plea agreement[s]'" and "'explicit factual finding[s] by the trial judge to which the defendant assented'" may serve as *Shepard*-approved evidence of the conduct underlying a defendant's conviction. *Bonilla*, 524 F.3d at 652 (citation omitted). Here, those documents do not prove a "crime of violence." Accordingly, the district court erred in applying the crime-of-violence enhancement. The Government does not contend that this error was harmless, and—given the 35-month discrepancy between Hernandez's sentence and the top of the likely Guidelines range—it was not harmless.

The Government concedes Hernandez's final argument—that his judgment should reflect that he was sentenced under 8 U.S.C. § 1326(b)(1) rather than § 1326(b)(2). We agree. Upon remand, the district court should correct the criminal judgment and any other documents reflecting this error accordingly.

VACATED and REMANDED, with the mandate to issue forthwith. We direct defense counsel to bring this case to the district court's attention immediately so that resentencing can occur expeditiously.

---

[6] The *Bonilla* court also believed that "extending *Martinez-Vega* . . .would unnecessarily bring it into conflict with *Neri-Hernandes* and *Gonzalez-Ramirez*." 524 F.3d at 653 n.4.

8