# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40331

United States Court of Appeals
Fifth Circuit

**FILED**

August 23, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

FREY PERLAZA-ORTIZ,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH, PRADO, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Frey Perlaza-Ortiz challenges a crime-of-violence sentencing enhancement predicated upon his prior conviction under Texas Penal Code § 22.05(b) ("Section 22.05(b)"). We VACATE the sentence and REMAND for resentencing.

## BACKGROUND

Perlaza-Ortiz is a Colombian citizen who pleaded guilty to unlawfully reentering the United States. At sentencing, the district court applied a sixteen-level increase to Perlaza-Ortiz's base offense level under Section

2L1.2(b)(1)(A)(ii) of the United States Sentencing Guidelines.[1] Perlaza-Ortiz objected to the enhancement, but the district court concluded that his prior conviction under Section 22.05(b) constituted a crime of violence.

The crime-of-violence enhancement accounted for the bulk of Perlaza-Ortiz's overall offense level of 21. The presentence report calculated a criminal history score of 6, which established a criminal history category of III.

Perlaza-Ortiz's offense level (21) and criminal history category (III) generated a guidelines range of 46–57 months' imprisonment. The court departed from the PSR's criminal history computation and applied a criminal history category of II. This departure produced a guidelines range of 41–51 months' imprisonment. "[H]aving considered that, as well as all the applicable [Section] 3553(a) factors," the court found "that the appropriate sentence . . . [was] a sentence of 41 months." Perlaza-Ortiz argues that he should have received only an eight-level enhancement, which would have lowered the applicable guidelines range to 18–24 months.

After announcing the sentence, the district court made the following statement:

> I also want to be very clear in this case that this sentence, if there is any some – for whatever reason, any miscalculation or inappropriate determination of a guideline range, based on the 3553(a) factors, this would definitely still be my sentence as to what would be the appropriate sentence with the 3553(a) factors taken as a whole.

## STANDARD OF REVIEW

"We review *de novo* whether a prior conviction qualifies as a crime of violence within the meaning of the Guidelines." *United States v. Rodriguez*, 711 F.3d 541, 548 (5th Cir. 2013) (en banc).

---

[1] Under § 2L1.2(b)(1)(A)(ii) of the 2015 Guidelines, defendants convicted of unlawful reentry after a prior conviction for a "crime of violence" receive a 16-level enhancement.

The Government also argues that any error in the district court's interpretation of the guidelines was harmless. "The harmless error doctrine applies only if the proponent of the sentence convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *United States v. Tanksley*, 848 F.3d 347, 353 (5th Cir.) (bracket omitted) (quoting *United States v. Ibarra-Luna*, 628 F.3d 712, 714 (5th Cir. 2010)), *supplemented on petition for rehearing en banc*, 854 F.3d 284 (5th Cir. 2017). "[I]t is not enough for the district court to say the same sentence would have been imposed but for the error." *Id.* Instead, "the government 'must show that the [sentence] the district court imposed was not influenced in any way by the erroneous Guideline calculation.'" *United States v. Hernandez-Montes*, 831 F.3d 284, 295 (5th Cir. 2016) (quoting *United States v. Ramos*, 739 F.3d 250, 253 (5th Cir. 2014)).

## ANALYSIS

The district court reached its sentencing decision before the decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016). The interpretive tools provided in *Mathis* lead us to the conclusion that Section 22.05(b) is not divisible. Because the government fails to prove Section 22.05(b) divisible, Section 22.05(b) may not be used here as the basis for a crime-of-violence enhancement.[2] While understandable in light of our pre-*Mathis* precedents, the district court's application of the enhancement constituted legal error. That error was not harmless.

---

[2] This holding follows our precedents stating that Section 22.05(b)(2) cannot support a crime-of-violence enhancement. *See United States v. Dixon*, 265 F. App'x 383, 385 (5th Cir. 2008) (unpublished); *see also United States v. Cabrera*, 478 F. App'x 204, 206 (5th Cir. 2012) (unpublished) ("Under our precedents, section 22.05 of the Texas Penal Code is not, in its entirety, a 'crime of violence.'").

No. 16-40331

## I.   Crime-of-violence enhancement

### A. Legal framework

Section 22.05(b) reads as follows: "A person commits an offense if he knowingly discharges a firearm at or in the direction of:

(1) one or more individuals; or

(2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied."

Tex. Penal Code § 22.05(b) (West 2017).

Perlaza-Ortiz and the Government agree that our pre-*Mathis* precedents considered § 22.05(b) a divisible statute and deemed § 22.05(b)(1) a crime of violence. *See United States v. Hernandez-Rodriguez*, 467 F.3d 492, 493–95 (5th Cir. 2006). As Perlaza-Ortiz notes, we have also concluded that the statute's other subsection, § 22.05(b)(2), does not constitute a crime of violence. *See United States v. Cabrera*, 478 F. App'x 204, 206 (5th Cir. 2012) (unpublished); *United States v. Dixon*, 265 F. App'x 383, 385 (5th Cir. 2008) (unpublished).

This case requires us to revisit the question of whether Section 22.05(b) is divisible, because *Mathis* supplants any of our precedents inconsistent with its methodology for identifying "truly divisible statutes." *See Tanksley*, 848 F.3d at 351; *see also United States v. Hinkle*, 832 F.3d 569, 574 (5th Cir. 2016) ("The *Mathis* decision is controlling regarding the methodology of the modified categorical approach, and we must apply its holdings, even if they are contrary to prior precedent of this court."). A statute is "divisible" if it "defines multiple crimes." *Tanksley*, 848 F.3d at 350 (bracket omitted) (quoting *Mathis*, 136 S. Ct. at 2249). If a statute is divisible, the court may use the "modified categorical approach," which "permit[s] courts to examine 'a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of.'" *Id.* (quoting *Mathis*, 136 S. Ct. at 2249).

"Some criminal statutes appear divisible but are not." *Id.* "These statutes, rather than providing alternative elements, instead list 'various factual means of committing a single element.'" *Id.* (quoting *Mathis*, 136 S. Ct. at 2249)). "In *Mathis*, the Supreme Court held that the modified categorical approach is not appropriate for this species of criminal statute." *Id.*

"*Mathis* provided helpful guidance for determining whether a predicate statute of conviction is divisible." *United States v. Uribe*, 838 F.3d 667, 670 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1359 (2017). "[I]n light of *Mathis*, we know that we must determine whether 'listed items' in a state statute 'are elements or means . . . .'" *Tanksley*, 848 F.3d at 351 (citation omitted). "Elements must be agreed upon by a jury." *United States v. Hinkle*, 832 F.3d 569, 575 (5th Cir. 2016) (citing *Mathis*, 136 S. Ct. at 2256). "When a jury is not required to agree on the way that a particular requirement of an offense is met, the way of satisfying that requirement is a means of committing an offense[,] not an element of the offense." *Id.* (citing *Mathis*, 136 S. Ct. at 2256). "[I]f 'a state court decision definitively answers the question' our inquiry is at an end." *Tanksley*, 848 F.3d at 351 (citation omitted). As a final note, there is a "demand for certainty" when evaluating "whether a defendant was convicted of a generic offense." *United States v. Lobaton-Andrade*, 861 F.3d 538, 542 (5th Cir. 2017) (per curiam) (quoting *Mathis*, 136 S. Ct. at 2257).

## B. Section 22.05(b) provides alternative means for committing deadly conduct

In this case, Texas law suggests, without answering definitively, that Section 22.05(b)'s subsections provide "alternative means for committing deadly conduct." *Butler v. State*, No. 10-13-00430-CR, 2015 WL 128908, at *12 (Tex. App.—Waco Jan. 8, 2015, pet. ref'd) (not designated for publication); *see also Tobar v. State*, No. 14-08-00520-CR, 2009 WL 3050590, at *4–5 (Tex. App.—Houston [14th Dist.] July 16, 2009, pet. ref'd) (not designated for

publication); *Burns v. State*, No. 05-96-01590-CR, 2001 WL 579934, at \*5 (Tex. App.—Dallas May 31, 2001) (not designated for publication).[3]

Though the unpublished Texas decisions stating this proposition are not precedential, *see* TEX. R. APP. P. 47, they can provide some help in analyzing divisibility. We therefore decline to limit our review of Texas case law to published decisions. Our consideration of unpublished state case law finds support in *United States v. McArthur*, where the Eighth Circuit looked to an unpublished Minnesota Court of Appeals's decision during its divisibility analysis. *See* 850 F.3d 925, 938 (8th Cir. 2017) ("The most helpful Minnesota court decision, although not precedential, holds that jury unanimity is not required as to one prong or the other of the burglary statute, thus suggesting that the alternatives are means rather than elements."); *see also United States v. Headbird*, 832 F.3d 844, 848 (8th Cir. 2016) (relying on two unpublished intermediate appellate decisions). We do not consider *United States v. Gundy*, an Eleventh Circuit ruling that referred in passing to the conclusive effect of "a precedential state court decision," to be meaningfully contrary. *See* 842 F.3d 1156, 1163 (11th Cir. 2016). The Eleventh Circuit did not directly consider whether a non-precedential state court decision can supply the clear state-law answer *Mathis* envisions. *See id.*

The Texas indictments underlying *Butler* and *Tobar* demonstrate that Section 22.05(b) provides alternative means of committing deadly conduct. In

---

[3] The only pertinent contrary authority of which we are aware comes from the dissent in *Gilbert v. State*, 429 S.W.3d 19, 26–28 (Tex. App.—Houston [1st Dist.] 2014, pet ref'd) (Keyes, J., dissenting). Judge Keyes stated that "[d]ischarging a firearm towards a habitation," conduct covered by Section 22.05(b)(2), "is a separate offense" from Section 22.05(b)(1)'s proscription on discharging a firearm towards an individual. *Id.* at 26. More importantly, in contrast to the cases cited above, the *Gilbert* dissent did not analyze the question of whether jurors must agree upon how a defendant violated Section 22.05(b) when the defendant is charged with conduct covered by both subsections. It does not, therefore, bear directly on our divisibility analysis.

No. 16-40331

both cases, the indictments charged, in separate paragraphs of a single count, that the defendant discharged a firearm towards an individual (Section 22.05(b)(1) conduct) and discharged a firearm in the direction of a habitation while being reckless as to whether it was occupied (Section 22.05(b)(2) conduct). *See Butler*, 2015 WL 128908, at *1–2; *see also Tobar*, 2009 WL 3050590, at *2. Under the Texas Code of Criminal Procedure, "[a] '*count*' [is] the proper method of charging *an offense*," while "the proper method of charging *different ways* of committing an offense [is] multiple '*paragraphs*'." *Romine v. State*, 722 S.W.2d 494, 501 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd) (construing Tex. Crim. Proc. Code Ann. art. 21.24); *see also Renfro v. State*, 827 S.W.2d 532, 535 (Tex. App.—Houston [1st Dist.] 1992) ("[T]he term 'count' is used to charge the offense itself, and a 'paragraph' is a portion of a count, which charges a method of committing the offense."). In the absence of any contrary indication, we assume that the indictments underlying *Butler* and *Tobar* were properly drafted. Their composition further clarifies that Section 22.05(b)'s subsections contain alternative means of committing the same offense.

The statute's legislative history points to the same conclusion. In 1993, Texas added the entirety of Section 22.05(b) to what had formerly been titled the "reckless conduct" statute. *See* 1993 Tex. Sess. Law Serv. Ch. 900 (S.B. 1067) (West). The Texas legislature's final conference committee report said the relevant portion of the revision "add[ed] to the offense (formerly 'reckless conduct') the conduct of knowingly discharging a firearm at or in the direction of one or more individuals or a habitation, building, or vehicle, and is reckless as to whether the habitation, building, or vehicle is occupied . . . ." S.B. 1067, 73d Regular Sess., Conf. Comm. Rep., "Side by Side Analysis" at 10 (May 23,

1993).[4] Notably, this document characterized Section 22.05(b)'s subsections as alternative "conduct" that could constitute a singular "offense." *See id.*; *see also* Tex. Senate Research Center, Bill Analysis (S.B. 1067) at 5 (Aug. 11, 1993) (stating that S.B. 1067 "add[ed] to the offenses under [Section 22.05] the offense of knowingly discharging a firearm at or in the direction of one or more individuals or a habitation, building, vehicle, and is reckless as to whether the habitation, building, or vehicle is occupied").

Even if we considered Texas law unclear despite the case law and legislative history discussed above, we would still resolve this case in Perlaza-Ortiz's favor. "[I]f state law fails to provide clear answers, federal judges have another place to look: the record of a prior conviction itself." *Mathis*, 136 S. Ct. at 2256. *Mathis* counsels that "an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements." *Mathis*, 136 S. Ct. at 2257. Here, there can be no doubt that the indictment references "one . . . term to the exclusion of all others"[5]; it charges Perlaza-Ortiz unmistakably with a violation of 22.01(b)(1), and makes no mention of habitations, buildings, or vehicles. Still, the indictment, along with the other arguments the Government presents, would not be enough to establish with the requisite "certainty" that Perlaza-Ortiz was convicted of a generic offense, especially when it is balanced against the clear, if unpublished, Texas case law. *See Lobaton-Andrade*, 861 F.3d at 542 (quoting *Mathis*, 136 S. Ct. at 2237). In such

---

[4] A compilation of legislative history is available at http://www.lrl.state.tx.us/legis/BillSearch/text.cfm?legSession=73-0&billtypeDetail=SB&billNumberDetail=1067&billSuffixDetail=&startRow=1&IDlist=&unClicklist=&number=100.

[5] Because Perlaza-Ortiz pleaded guilty, there is no jury charge.

uncertain circumstances, the Government has not shown that the statute is divisible. The district court's finding otherwise constituted legal error.

## II.    The error was not harmless

The Government has not carried its burden of demonstrating that Perlaza-Ortiz's sentence "was not influenced in any way by the erroneous Guideline calculation.'" *See Hernandez-Montes*, 831 F.3d at 295 (quoting *Ramos*, 739 F.3d at 253). At sentencing, the district court calculated a 41-to-51 month post-departure range based in part on the crime-of-violence enhancement. "Then, the Court, having considered that, as well as all the applicable [Section] 3553(a) factors, . . . [found] that the appropriate sentence . . . [was] a sentence of 41 months." "We . . . conclude that the district court's selection of the bottom of the incorrect guideline range indicates that the improper guideline calculation influenced the sentence." *United States v. Martinez-Romero*, 817 F.3d 917, 926 (5th Cir. 2016). We therefore decline to apply the harmless-error doctrine.

## CONCLUSION

For the reasons discussed above, we VACATE Perlaza-Ortiz's sentence and REMAND for resentencing.