**Opinion issued January 23, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00350-CR

———————————

**ANTHONY JEROME GILBERT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 21st District Court**
**Washington County, Texas**
**Trial Court Case No. 15671**

---

## O P I N I O N

A jury convicted appellant Anthony Jerome Gilbert of deadly conduct involving discharge of a firearm. *See* TEX. PEN. CODE ANN. § 22.05(b)(1) (West 2011). On appeal, Gilbert contends that there was insufficient evidence for a rational jury to convict him. We affirm.

## Background

James Daniels Sr. hosted a family barbecue at his home in Brenham, Texas. The front of the house, including the porch and windows, is depicted in State's Exhibit 2, which is attached as an appendix to this opinion. The people in attendance included: his wife, Amy Daniels; his parents, William and Earline Mathis; his niece, Shana Daniels; and at least a half-dozen children.

The family was sitting on a recessed front porch when Anthony Gilbert approached and accused them of telling his wife about his affair with Shana. James and Amy assured Gilbert that no one had spoken to his wife. Nevertheless an argument ensued, and Gilbert was asked to leave.

Later that evening, Gilbert returned to the Daniels residence with a shotgun. After noticing the gun, James ran to the porch. Most of the rest of the family, who already had been on the porch, took cover or dove into the house. William remained on the porch.

Gilbert proceeded to fire the shotgun several times. He then retrieved his shotgun shells and left the premises. During the subsequent police investigation, marks consistent with shotgun spread were found on the far right window, only a few feet from the porch.

Gilbert was charged with committing deadly conduct by discharge of a firearm. He pleaded not guilty. At trial, James, Earline, William, and Amy

2

testified as eyewitnesses. While there were inconsistencies about details, the witnesses generally agreed that Gilbert discharged his firearm in the direction of the house while James was on the porch.

James specifically testified that he was "on the porch" when Gilbert fired the last shot. 3 RR 36–37. Standing on the porch, James "peeked around" the corner and could see Gilbert "the whole time from the porch." According to James, Gilbert was positioned "on the street," "in front of the house," and "up a little bit"—thus indicating though not expressly stating that from his perspective standing on the porch and looking out toward the yard in front of the house, Gilbert was positioned to James's left. While James testified that Gilbert had aimed "at the house" but did not know if he had aimed specifically "at the house or me," he also testified that "it was kind of close" to him and that he "could have got hit." He testified, "I just fell backwards, you know what I'm saying, and I thought I was hit but I wasn't." 3 RR 29.

William testified that James "was on the porch" and that Gilbert shot "at the porch." 3 RR 52-53. Earline also testified that Gilbert fired a shot in the direction of the porch and that James was among the people on the porch. 3 RR 64. She also testified that Gilbert "shot at the window that's closest to the porch," and that he "was standing right close up on us . . . from the road he had climbed up on the grass and started shooting." Amy testified that Gilbert "pulled a gun, he fired once

3

I think in the air and then two more times at the house. One time was where my husband was walking towards the house." 3 RR 70.

The jury was instructed, "[I]f you find from the evidence beyond a reasonable doubt that . . . Anthony Jerome Gilbert, did then and there knowingly discharge a firearm at or in the direction of an individual, namely, James Charles Daniels, Sr., you will find the defendant guilty . . . ." The jury found Gilbert guilty of deadly conduct, and he was sentenced to serve 75 years in prison. Gilbert appealed.

## Analysis

Gilbert argues that there was insufficient evidence presented at trial to convict him of deadly conduct. A person commits deadly conduct if he knowingly discharges a firearm "at or in the direction of" an individual. TEX. PEN. CODE ANN. § 22.05(b)(1). The indictment alleged that Gilbert "did . . . knowingly discharge a firearm at or in the direction of an individual, namely, James Charles Daniels, Sr."

We apply the legal-sufficiency standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979), to determine if the evidence is sufficient to support each element of a criminal offense that the State must prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under this standard, an appellate court views the evidence "in the light most favorable to the verdict." *Id*. at 899 (quoting *Watson v. State*, 204 S.W.3d 404, 415 (Tex. Crim.

4

App. 2006)).  Viewing the evidence "in the light most favorable to the verdict" means that the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole arbiter of the witnesses' credibility and the weight to be given to their testimony.  *Id.*  The evidence is insufficient under this standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) the evidence conclusively establishes a reasonable doubt.  *Kiffe v. State*, 361 S.W.3d 104, 107 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).  With respect to the second circumstance, the Court of Criminal Appeals has explained that the jury's verdict should be upheld "unless a rational factfinder must have had reasonable doubt as to any essential element."  *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009); *see also Johnson v. Louisiana*, 406 U.S. 356, 362, 92 S. Ct. 1620, 1625 (1972) ("That rational men disagree is not in itself equivalent to a failure of proof by the State, nor does it indicate infidelity to the reasonable-doubt standard.").  Accordingly, it is insufficient that a rational jury merely could have harbored a reasonable doubt.  "Jury verdicts finding guilty beyond a reasonable doubt are regularly sustained even though the evidence was such that the jury would have been justified in having a reasonable doubt . . . ."  *Johnson*, 406 U.S. at 362, 92 S. Ct. at 1625.

No party disputes that Gilbert knowingly discharged a firearm. In fact, four eyewitnesses testified to seeing Gilbert intentionally fire a shotgun multiple times. However, Gilbert contends that there was insufficient evidence at trial for a rational jury to find that he fired the shotgun in the direction of James, the complainant.

The Penal Code supplies no definitions to aid in the application of section 22.05(b)'s prohibition of discharging a firearm "at or in the direction of" an individual. *See, e.g.*, TEX. PEN. CODE ANN. §§ 1.07, 22.05. "Words not specially defined by the Legislature are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance." *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). "Accordingly, when determining the sufficiency of evidence to support a jury verdict, reviewing courts must not employ definitions of relevant statutory words which are different or more restrictive than the jurors themselves were legally entitled to use." *Id.*

To discharge a firearm "at" a person is to shoot the weapon toward that person's location. *See, e.g.*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 72 (10th ed. 1993) (defining "at" as "a function word to indicate the goal of an indicated or implied action or motion <aim ~ the target> <creditors are ~ him again>"). Similarly, to discharge a firearm "in the direction of" a person also

means to shoot toward that person's location. *See, e.g., id.* at 328 (defining "direction" as "the line or course on which something is moving or is aimed to move or along which something is pointing or facing"); *see also id.* at 1248 (defining "toward" as "in the direction of"). Despite the interpretative canon that "each word, phrase, clause, and sentence should be given effect if reasonably possible,"[1] the parties do not suggest, and we do not discern, any meaningful difference in ordinary usage between discharging a firearm "at" a person and discharging it "in the direction of" a person.[2]

Daniels testified that he was on the porch when Gilbert fired the final shot that impacted the house. 3 RR 36. Earline specifically identified James as one of the people on the porch at the time Gilbert fired in the direction of the porch. 3 RR 64. Additionally, James's wife Amy, when asked what happened when Gilbert returned, responded, "[H]e pulled a gun, he fired once I think in the air and then two more times at the house. One time was where my husband was walking towards the house." 3 RR 70.

---

[1]    *E.g., Williams v. State*, 270 S.W.3d 140, 146 (Tex. Crim. App. 2008); *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997).

[2]    *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 176–77 (2012) ("Put to a choice . . . a court may well prefer ordinary meaning to an unusual meaning that will avoid surplusage. . . . Sometimes drafters *do* repeat themselves and *do* include words that add nothing of substance . . . .").

Gilbert's argument focuses on inconsistencies in the testimony and photographic evidence that shotgun pellets struck the front window farthest from the porch where James stood. He invokes "the principles of geometry and physics" to argue that the evidence shows that the porch must have been on his left while he shot to his right, hitting the right side of the house, and accordingly no rational jury could conclude that he discharged the weapon in the direction of James. While the evidence at trial about Gilbert's location relative to the house was rather sparse, viewing the evidence in the light most favorable to the verdict requires that we assume the jury drew the opposite conclusion—that Gilbert was positioned slightly down the street, aiming his shotgun such that he was aiming toward the house, including its windows and adjacent porch where James was standing.

"When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and therefore defer to that determination." *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793). Whatever inconsistencies it may include, the record does present testimony of two witnesses—Earline Mathis and Amy Daniels—who affirmed that Gilbert fired in the direction of James. In light of this testimony, we cannot say that a reasonable jury must have held reasonable doubt about whether a firearm was discharged in James's direction. As

8

the finder of fact, the trial jury was entitled to sift through the proof to reach its conclusion from whatever rational combination of record evidence it wished to credit. Accordingly, we must defer to the jury's determination and find there was sufficient evidence to support the verdict. *See Jackson*, 443 U.S. at 326; *Temple*, 390 S.W.3d at 360.

Since there was eyewitness testimony at trial that showed Gilbert aimed and fired his shotgun at or in the direction of James Charles Daniels Sr., we find that the jury was rationally justified in finding beyond a reasonable doubt that Gilbert knowingly discharged a firearm at or in the direction of James Charles Daniels, Sr. Thus, the evidence was sufficient to support a conviction of deadly conduct.

## Conclusion

We conclude that the cumulative effect of the testimony of the four eyewitnesses was sufficient to permit a reasonable jury to conclude that Gilbert discharged the shotgun at or in the direction of James Daniels.  We affirm the judgment.


Michael Massengale
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Justice Keyes, dissenting.

Publish.  TEX. R. APP. P. 47.2(b).

10

# Appendix

