# NO. 12-13-00310-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JAMES LANE ESSARY,*<br>*APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

James Lane Essary appeals his convictions for unlawful possession of a firearm by a felon and deadly conduct. In one issue on appeal, Appellant challenges the legal sufficiency of the evidence to support his convictions. We modify and, as modified, affirm.

## BACKGROUND

Appellant was charged by indictment with unlawful possession of a firearm by a felon and deadly conduct, both third degree felonies. He pleaded "not guilty," and the case proceeded to a jury trial. At the conclusion of the trial, the jury found Appellant guilty of both offenses as charged in the indictment, and assessed his punishment at nine years of imprisonment for each offense. This appeal followed.

## LEGAL SUFFICIENCY

In his sole issue on appeal, Appellant argues that the evidence is legally insufficient to support his convictions. More specifically, he contends that there is insufficient evidence to support the jury's conclusions that a firearm was discharged in the direction of the victim and that he was the person who discharged a firearm.

**Standard of Review**

In Texas, the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. *Hernandez v. State*, 190 S.W.3d 856, 864 (Tex. App.—Corpus Christi 2006, no pet.).

**Applicable Law**

A person commits the offense of deadly conduct if he knowingly discharges a firearm at or in the direction of one or more individuals. *See* TEX. PENAL CODE ANN. § 22.05(b)(1) (West 2011). The penal code supplies no definitions to aid in the application of section 22.05(b)'s prohibition of discharging a firearm "at or in the direction of" an individual. *Gilbert v. State*, 429 S.W.3d 19, 22 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *see, e.g.*, TEX. PENAL CODE ANN. § 1.07 (West Supp. 2014), § 22.05(b)(1). To discharge a firearm "at" a person is to shoot the weapon toward that person's location. *See, e.g.*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 77 (11th ed. 2011) (defining "at" as "a function word to indicate the goal of an indicated or implied action or motion"). Similarly, to discharge a firearm "in the direction of" a person also means to shoot toward that person's location. *See id.* at 353 (defining "direction" as "the line or course on which something is moving or is aimed to move or along which something

is pointing or facing"); *see also id.* at 1322 (defining "toward" as "in the direction of"). Despite the interpretive canon that "each word, phrase, clause, and sentence should be given effect if reasonably possible," there is no meaningful difference in ordinary usage between discharging a firearm "at" a person and discharging it "in the direction of" a person. *Gilbert*, 429 S.W.3d at 22 (citing *Williams v. State*, 270 S.W.3d 140, 146 (Tex. Crim. App. 2008); *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997)).

The state is required to prove that the accused was the person who committed the crime. *Wilson v. State*, 9 S.W.3d 852, 855 (Tex. App.—Austin 2000, no pet.). The identity of the perpetrator of an offense can be proved by direct or circumstantial evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Dudley v. State*, 205 S.W.3d 82, 88 (Tex. App.—Tyler 2006, no pet.). Eyewitness identification is not necessary to determine identity. *See Earls*, 707 S.W.2d at 85. Any discrepancies in the description of the perpetrator's appearance go to the weight and credibility of the witnesses. *Id.* No formalized procedure is required for the state to prove the identity of the accused. *Wilson*, 9 S.W.3d at 855.

A person who has been convicted of a felony commits an offense if he possesses a firearm after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later. *See* TEX. PENAL CODE ANN. § 46.04(a)(1) (West 2011). "Possession" means actual care, custody, control, or management. *See id.* § 1.07(39) (West Supp. 2014).

**<u>The Evidence</u>**

At approximately 10:30 p.m. on November 13, 2011, Cody Jay Michael Knight, James Samuel Phillips, and Cody Wayne Oliver traveled in Phillips's vehicle to Polk's, a gas station and store on Highway 69. Phillips parked his vehicle, and Oliver left them. Phillips and Knight saw a man and a woman arguing about six to ten car lengths away. Knight described the man as blond, wearing a blue and white shirt, and in his late twenties. Phillips said that the man was in his forties or fifties. Knight and Phillips noticed that the man was stumbling around and appeared to be "drunk." They stated that the man was standing near a tan extended cab Chevrolet Silverado pickup truck with stick-on or "mailbox" letters on the back window that Phillips believed formed song lyrics.

Knight and Phillips testified that the man noticed they were looking at him, and did not seem happy. According to Phillips, the man "rose up his hands, like, what are you going to do about it," and looked angry. When Knight and Phillips left Polk's, they drove past the same man who realized they were looking at him again, threw his hands up, and got in his pickup. As they traveled past the gas pumps, the same man in the same pickup began traveling behind them. Then, the man got out of his pickup, gestured at the men "like he wanted to fight" or "like he's going to try to run up to [the car] or something," and jumped back into his pickup. Knight and Phillips identified Appellant as the man in the pickup.

The man followed them on Highway 69 as they traveled to Knight's house. Knight and Phillips lost sight of the pickup after Phillips turned toward Knight's house. But after they arrived, they saw the same pickup stop at the end of the driveway. Phillips and Knight went into the house, but at some point, Knight got a hammer and went outside to ask the man why he was following him. Knight yelled at the man, and as he went down the driveway, he noticed that the man began "idling off real easy." He began to run towards the pickup, and when he was about fifty feet from it, he saw the man pull a gun out of the window, point it towards the woods, and shoot it. He had stopped running when the man pointed the gun "straight at" him and shot it.

Knight noticed the gun was a black revolver and saw a muzzle flash with both shots. He saw the man's face and shirt as he shot the gun, and recognized him as the man he had seen at Polk's earlier that night. The pickup sped away, and Knight recognized it as the same pickup he had seen at Polk's because it had the same distinctive letters on the back window.

Knight's mother called law enforcement, and Phillips and Knight called Oliver and told him what had happened. Oliver went to Knight's house, and based on the information he received there, traveled back to Polk's. He saw the pickup described by Phillips and Knight at Polk's. He also saw a man sitting on the tailgate wearing a short sleeved blue and white striped shirt, long blue jean pants, and boots. He called Knight and told him the pickup he described was at Polk's. Knight's mother called 911 again to provide this information to law enforcement.

An Angelina County sheriff's deputy and a Hudson police officer traveled to Polk's in response to a call for discharge of a firearm. They discovered a man matching the suspect's description sitting in a tan, gold, or champagne colored Chevrolet pickup. The pickup had letters forming some type of lyrics on the back window and matched the description of the suspect's vehicle. The deputy ordered the driver out of the vehicle and handcuffed him for safety. He

4

recalled that the driver, Appellant, admitted that he had been drinking and was waiting for a ride. The police officer detected a "vague" odor of alcohol emitting from Appellant.

Appellant denied having a firearm in his vehicle because he was a convicted felon, and gave the officers consent to search his vehicle. During the search, they discovered three spent shell casings for a .22 caliber firearm in the front passenger's seat, and a .22 caliber black and brown revolver inside a lockbox in the bed of the pickup. In addition, they removed six empty shell casings from the revolver and six spent shell casings from inside the lockbox.

Knight testified that he was able to see the man in the pickup at the end of his driveway because of the moonlight. He believed the man shooting at him was wearing a red cap, but the deputy who arrested Appellant noted that he had a white cap when he was booked into jail that night. Appellant was also wearing shorts when he was taken to jail, and Knight did not know why he told the 911 dispatcher that the man was wearing blue jeans other than that the pickup truck's hood may have blocked his vision. However, Oliver also believed that the man he saw at Polk's was wearing blue jeans. Knight wrote in his statement to law enforcement that there was only one shot. He believed he made a mistake because he was in shock and tired. No latent fingerprints were found on the firearm or the lockbox key and the partial latent fingerprints found on the lockbox lacked sufficient quality to compare them to the suspect's fingerprints. The deputy could not find the videotape of the stop, and did not conduct a test on Appellant to determine if he had gun powder residue on his hands.

John Essary, Appellant's brother, testified that on November 13, 2011, he used the .22 revolver found in the lockbox in Appellant's pickup and fired all the rounds in the revolver. Then, he put the .22 revolver in the lockbox, put the lockbox in the bed of Appellant's pickup, and went into his house. Later, he went back outside and discovered the pickup was gone. He did not realize at that point that the gun was in the pickup.

Jack Essary, Appellant's father, testified that he had never seen any firearms in Appellant's residence or in his pickup. Timothy Leon Steel testified that in January 2010, Appellant threatened him with a .22 rifle, putting it within inches of his face. John Essary denied that Appellant threatened Steel with a firearm. Douglas Randall Minshew, an agent with the Texas Department of Public Safety, stated that he had lived less than a mile from Appellant's father and brother for approximately thirty years. He stated that their reputation for truthfulness and veracity was bad.

5

**Conclusion**

Knight and Phillips identified Appellant as the man at Polk's who appeared to threaten them and follow them from the gas station. They also recognized his distinctive pickup, specifically mentioning its color and the letters on the back window forming some type of lyrics. Knight testified that the man who shot at him was the same man who threatened him at Polk's. He also testified that the pickup was the same one, recognizing its distinctive white letters on the back window when it sped off. The arresting officers found Appellant sitting in a pickup that matched the description of the suspect's vehicle, including the distinctive lettering on the back window of the pickup and its coloring. The officers found spent shell casings from a .22 caliber firearm in the front seat of the pickup and a .22 caliber revolver in a lockbox in the bed of the pickup.

From this evidence, the jury reasonably could have concluded that Appellant was the person who discharged a firearm at Knight's house on November 13, 2011, and that he discharged the firearm "at or in the direction of" Knight. The jury could have believed Knight's testimony that Appellant was the man shooting at him. There was some conflicting evidence including the color of the suspect's cap, the clothing the suspect was wearing, and the number of gunshots. Further, Appellant's father testified that Appellant did not have a firearm, and his brother testified that he put the firearm in the pickup. It is the jury's province to resolve any conflicts in the evidence, and we must presume that they did so in favor of the verdict. *See Clayton*, 235 S.W.3d at 778. Therefore, we conclude that the jury reasonably could have found the essential elements of deadly conduct beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 22.05(b)(1).

Regarding the offense of possession of a firearm by a felon, Appellant stipulated that he was convicted of the state jail felony offense of fraudulent use of identifying information on June 8, 2007, and that the alleged offense occurred less than five years after the term of confinement following his state jail felony conviction. *See* TEX. PENAL CODE ANN. § 46.04(a)(1). Knight identified Appellant as the person who discharged a firearm at him. The officers found a .22 caliber revolver in a lockbox in the bed of Appellant's pickup. From this evidence, the jury reasonably could have concluded that Appellant had actual care, custody, control, or management of a firearm. Therefore, we conclude that the jury reasonably could have found the essential elements of felon in possession of a firearm beyond a reasonable doubt.

6

The evidence is legally sufficient to support Appellant's convictions. We overrule Appellant's sole issue.

## PUNISHMENT

After the punishment hearing, the jury assessed Appellant's punishment for each offense. The trial court orally pronounced the same sentence: "nine years as to each count." Although neither party has raised the issue, we note that the singular judgment for both counts states that the jury assessed Appellant's punishment at nine years of imprisonment. An appellate court has the power to correct and reform a trial court judgment to make the record "speak the truth" when it has the necessary data and information before it to do so. *Cobb v. State*, 95 S.W.3d 664, 668 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Therefore, the judgment should be modified to properly reflect Appellant's sentence.

## DISPOSITION

We have overruled Appellant's sole issue. Having found that the judgment of conviction erroneously states Appellant's punishment, we *modify* the judgment by deleting the phrase "Nine (9) Years Institutional Division, TDCJ," and substituting the phrase "Nine (9) Years Institutional Division, TDCJ, as to Count I, and Nine (9) Years Institutional Division, TDCJ, as to Count II." We *affirm* the trial court's judgment as *modified*.

SAM GRIFFITH
Justice

Opinion delivered August 6, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 6, 2014**

**NO. 12-13-00310-CR**

**JAMES LANE ESSARY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 217th District Court

of Angelina County, Texas (Tr.Ct.No. 2013-0171)

THIS CAUSE came on to be heard on the appellate record and the briefs filed herein; and the same being inspected, it is the opinion of the Court that the trial court's judgment below should be **modified and, as modified, affirmed**.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's judgment below be **modified** judgment by deleting the phrase "Nine (9) Years Institutional Division, TDCJ," and substituting the phrase "Nine (9) Years Institutional Division, TDCJ, as to Count I, and Nine (9) Years Institutional Division, TDCJ, as to Count II,"; **and as modified**, the trial court's judgment is **affirmed**; and that this decision be certified to the trial court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*