**Opinion filed April 30, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00161-CR

_____

## RICHARD JON VALADEZ, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR22181**

### M E M O R A N D U M   O P I N I O N

The jury found Richard Jon Valadez guilty of the offense of deadly conduct.[1] He elected to have the trial court assess punishment, and it assessed punishment at confinement for six years; the trial court then sentenced him accordingly. Appellant argues, in a single issue, that the evidence was insufficient to convict him because the State failed to prove beyond a reasonable doubt that he knowingly discharged a firearm at members of his family or in their direction when they were outside his door. We affirm.

---

[1]*See* TEX. PENAL CODE ANN. § 22.05(b)(1) (West 2011).

## I. *The Charged Offense*

The indictment alleged that Appellant "knowingly discharge[d] a firearm at or in the direction of individuals, namely, Gino Valadez, Lia Valadez, or Rosario Valadez." As relevant here, a person commits the offense of deadly conduct "if he knowingly discharges a firearm at or in the direction of . . . one or more individuals." PENAL § 22.05(b)(1). The offense of deadly conduct for the act described is a third-degree felony, which is punishable by imprisonment for any term of not more than ten years or less than two years and a fine not to exceed $10,000. *Id.* §§ 22.05(e), 12.34.

## II. *Evidence at Trial*

Appellant and his wife, Rosario, lived together in a house outside Brownwood with their son, Gino, and their two daughters, Lia and Adaniah. One Friday night, Rosario and her two daughters left home to pick up Gino from his football game; Appellant stayed home. Rosario and her children returned home around midnight and found the front porch lights and inside lights turned off. They all got out of the car and walked to the front porch. Rosario stood directly in front of the door to the house, while her children stood on either side of her. Rosario did not have the keys, and the door was locked.

Rosario knocked twice but received no answer, and after her third knock, she heard Appellant from inside the house tell her to "go away." Rosario continued to knock and demanded that Appellant open the door, but he again replied, "Just leave, go away." Gino then became upset and kicked the bottom of the door. According to Rosario, the door then started "jiggling." A few seconds later a gunshot went off from inside the house, but no one was hit. Rosario testified she owned a .22 caliber pistol and two .22 caliber rifles and that, based on her past experience, she believed the shot came from a .22 caliber gun.

2

After the gunshot, Rosario stood on the front porch in shock. All three of her children ran back to the car and yelled for their mother to join them. Rosario went to the car and drove to her sister's house to call 911. From there, Rosario and her children met law enforcement officers at an intersection near her sister's house; Rosario told law enforcement that Appellant "had shot at us." Rosario and the children stayed the night at the Arc, a local domestic violence shelter. Rosario and her children did not return to their house until after law enforcement apprehended Appellant a few days later.

Lia and Gino each testified. They both indicated that the front door was locked when they returned home on that night and that their mother had talked to Appellant through the door. According to Lia, after Gino kicked the bottom of the door, it started "rattling like as if [Appellant] was trying to unlock it"; according to Gino, the door started "jiggling" as if Appellant was trying to open it. Seconds later, during the "rattling" and "jiggling," they heard a gunshot from inside the house. Scared, they ran back to the car and left the house. Gino testified he ran away immediately because he "thought [he] was being shot at."

After Rosario spoke with law enforcement, Captain Tony Dwayne Aaron of the Brown County Sherriff's Office arrived to help manage the situation. Captain Aaron initially attempted to make telephone contact with Appellant rather than approach the house on foot. Captain Aaron knew that Appellant was still in the house, and he wanted to proceed with caution because it was a situation where "a husband had allegedly fired a shot through the door at a wife and children."

Over the weekend, Appellant's family and law enforcement attempted to make telephone contact with Appellant with no success. By Monday morning, law enforcement reached Appellant on the telephone and told him they wanted to "talk to [him] and get [his] side of the story," and they asked him to come out of the house. In response, Appellant became angry and yelled. When Appellant refused to

cooperate, police officers went to Appellant's house. After a standoff that lasted nearly an hour, police officers shot pepper spray canisters into the house, and when Appellant finally emerged, he was arrested.

### III. *Standard of Review*

We review the sufficiency of the evidence under the standard of review in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact is the sole judge of the weight and credibility of the evidence. *Brooks*, 323 S.W.3d at 899 (citing *Jackson*, 443 U.S. at 319, 326). A reviewing court may not reevaluate the weight and credibility of the evidence to substitute its own judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). The reviewing court must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

### IV. *Discussion and Analysis*

Appellant asserts he did not knowingly discharge a weapon at anyone. "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." PENAL § 6.03(b). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* Knowledge may be inferred from the acts, words, and conduct of the accused and from the

4

circumstances in which the prohibited act occurred. *See Hernandez v. State*, 819 S.W.2d 806, 809–10 (Tex. Crim. App. 1991); *see also Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). To discharge a gun "at" someone is to shoot the gun toward that person's location. *Gilbert v. State*, 429 S.W.3d 19, 22 (Tex. App.— Houston [1st Dist.] 2014, pet. ref'd) (citing MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 72 (10th Ed. 1993)). Similarly, to discharge a gun "in the direction of" someone means to shoot the gun toward that person's location. *Id.* (citing MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY at 328). We discern no meaningful difference in ordinary usage between the discharge of a firearm "at" a person and the discharge of a firearm "in the direction of" a person. *Williams v. State*, 270 S.W.3d 140, 146 (Tex. Crim. App. 2008); *see also Gilbert*, 429 S.W.3d at 22.

In the moments before the gunshot and in response to their knocking on the door, Appellant told his wife and children to "go away" and then again to "just leave, go away." After Gino kicked the door, as Rosario demanded entry into the house, they heard the door "jiggling" or "rattling." Seconds later, a gunshot went off and a bullet went through the door. The bullet entered the door from the inside of the house, exited the opposite side of the door a few inches higher, and then entered the roof of the front porch overhang.

At the time of the gunshot, Rosario was standing directly in front of the door while Lia and Gino[2] stood on either side of her. Rosario acknowledged that, given the location of the bullet hole on the inside of the door, had Appellant shot straight through the door, the bullet would have hit her in the face. Gino said that the bullet hole on the inside of the door was at the same height as his chest. From this evidence, a rational jury could have inferred that Appellant knew his family members were

---

[2]The evidence also indicated that Appellant's youngest daughter, Adaniah, was standing on the porch. However, the indictment did not allege that Appellant discharged a firearm at or in the direction of her, so for purposes of our analysis, we will not include her.

standing directly on the other side of the door from him and could have concluded that Appellant, when he fired a shot through the front door, discharged a firearm "at or in the direction of" Rosario, Gino, and Lia.

Appellant argued that he held the gun abnormally when he tried to open the door, that he did not have his finger on the trigger, and that the gun accidently discharged; he argued that the trajectory of the bullet indicated that the gun was accidently discharged and, thus, that he did not act knowingly. Captain Aaron testified there were no burns or scars on Appellant's hands and that such marks would likely have been present if Appellant had held the gun in an abnormal way when it was discharged. The State introduced into evidence the only .22 caliber pistol found at the house. Captain Aaron testified that the pistol operated normally when he tested it, although he could not rule out the possibility that it had misfired. Appellant explained that he did not act knowingly, but the jury resolved that issue against him. *See Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. After a review of the evidence in the light most favorable to the verdict, we hold that there was sufficient evidence for a rational jury to have found beyond a reasonable doubt that Appellant knowingly discharged a firearm at or in the direction of Rosario, Gino, and Lia. Appellant's sole issue on appeal is overruled.

V. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

April 30, 2015                                JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.