# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-18-00742-CR

---

**Ramon Chavez-Calderon, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 368TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 16-2046-K368, THE HONORABLE RICK J. KENNON, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Ramon Chavez-Calderon was charged with the aggravated assault of Alexis Sanchez-Escalera. *See* Tex. Penal Code §§ 22.01(a)(2), .02(a)(2). The jury charge included an instruction on the lesser-included offense of deadly conduct. *See id.* § 22.05(b). The jury returned a verdict of guilty only for the lesser offense and determined that Chavez-Calderon should be sentenced to ten years' imprisonment. *See id.* §§ 12.34, 22.05(e). The district court rendered its judgment of conviction for the lesser offense in accordance with the jury's verdicts. On appeal, Chavez-Calderon contends that the evidence is insufficient to support his conviction. We will affirm the district court's judgment of conviction.

### BACKGROUND

As set out above, Chavez-Calderon was charged with aggravated assault, and the jury charge included an instruction on the lesser-included offense of deadly conduct. During

the trial, the State called Sanchez-Escalera, Officer David Hancock, and Officer Carlos Cardona as witnesses.

Sanchez-Escalera testified that on the night in question, she was having a party with friends at her house. Further, Sanchez-Escalera explained that her cousin Patricia Guzman brought Chavez-Calderon and her friend Jen[1] as guests to the party, that the three of them arrived in Chavez-Calderon's SUV, that he was "passed out" when he arrived, that Guzman and Jen placed him on a couch, and that he was still unconscious when Guzman and Jen decided to leave a few hours later and helped him back to his vehicle. During her cross-examination, Sanchez-Escalera admitted that she and several other people from the party went inside Chavez-Calderon's SUV multiple times throughout the evening while he was asleep.

Regarding later events, Sanchez-Escalera related that she went outside to smoke a cigarette on her front porch, that Chavez-Calderon returned to the house in his SUV, that he walked towards her, that he started yelling that someone stole his money while he was at her house, and that he pulled out a gun. In addition, Sanchez-Escalera explained that Chavez-Calderon was initially waiving the gun around and pointing it "to the sky" but that Chavez-Calderon later pointed the gun "up like he was going to shoot" and then fired the gun. Next, Sanchez-Escalera testified that while she tried to go back in her house, Chavez-Calderon pointed the gun at her before shooting the gun again and that Chavez-Calderon eventually returned to his SUV and drove away.

After Sanchez-Escalera finished testifying, Officer Cardona was called to the stand and testified that the police found two shell casings outside Sanchez-Escalera's home and found a weapon and ammunition inside Chavez-Calderon's SUV shortly after the incident

---

[1] The record does not specify what Jen's last name is.

occurred. In addition, Officer Hancock testified that Chavez-Calderon admitted that he had a gun in his SUV, that he asserted that someone stole his money while he was asleep at Sanchez-Escalera's home, and that the police did not discover any bullet holes in Sanchez-Escalera's house.

During the testimony of the law-enforcement officers, photographs of the scene were admitted into evidence. Some of the photographs show the exterior of Sanchez-Escalera's home, including the front porch where she testified that she was sitting when Chavez-Calderon returned. Those photos reveal that the front porch is on the left side of the house, that the portion of her home to the right of the porch extends forward toward the road, and that there is a security camera installed above the front porch.

In addition to the photos discussed above, security footage from the camera above Sanchez-Escalera's porch was admitted into evidence and played for the jury. The black and white footage, which does not include sound, shows an individual identified as Chavez-Calderon walking to the front porch of Sanchez-Escalera's home, pulling out a gun, and pointing the gun to the right of the porch. In addition, the footage depicts Chavez-Calderon firing the weapon twice and moving the gun from above his head to a position parallel to the ground both times that he fired the weapon, but the footage does not clearly capture the moments that he fired the gun. Finally, the footage shows Chavez-Calderon attempting to charge forward toward the front porch while being held back by another person and pointing the gun in front of him toward the porch.

After considering the evidence presented at trial, the jury found Chavez-Calderon guilty of the lesser-included offense of deadly conduct.

## DISCUSSION

In his issue on appeal, Chavez-Calderon contends that the evidence is legally insufficient to support his conviction for deadly conduct.

3

Under a legal-sufficiency standard of review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make "reasonable inferences from basic facts to ultimate facts." *Id.*; *see also* Tex. Code Crim. Proc. art. 36.13 (explaining that "jury is the exclusive judge of the facts"). Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and "defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Id.* at 107 (quoting *Jackson*, 443 U.S. at 320).

As set out above, the jury convicted Chavez-Calderon of the lesser offense of deadly conduct. *See* Tex. Penal Code § 22.05. A person commits that "offense if he knowingly discharges a firearm at or in the direction of . . . (1) one or more individuals . . . or (2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is

4

occupied." *Id.* § 22.05(b). "The Penal Code supplies no definitions to aid in the application of section 22.05(b)'s prohibition of discharging a firearm 'at or in the direction of'" of people or structures. *See Gilbert v. State*, 429 S.W.3d 19, 22 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (quoting Tex. Penal Code § 22.05(b) and citing Tex. Penal Code § 1.07). Although the statute uses both phrases "at" and "in the direction of," courts have determined that there is no "meaningful difference" between those phrases because they both mean, in this context, to discharge a weapon "toward" a particular location. *See id.*; *see also Drayton v. State*, No. 12-14-00144-CR, 2015 WL 859084, at *2 (Tex. App.—Tyler Feb. 27, 2015, no pet.) (mem. op., not designated for publication) (noting that discharging weapon at object means "to shoot the weapon toward that object's location" and that discharging weapon in direction of object has same meaning). The jury charge in this case included an instruction tracking the alternative language from subsection 22.05(b) and allowed for a conviction if the jury determined that Chavez-Calderon discharged a weapon in the direction of one or more individuals *or* a habitation. *See* Tex. Penal Code § 22.05(b). "[W]hen multiple theories are submitted to the jury, the evidence is sufficient to support a conviction so long as the evidence is sufficient to support conviction for one of the theories submitted to the jury." *Guevara v. State*, 152 S.W.3d 45, 52 (Tex. Crim. App. 2004).

On appeal, Chavez-Calderon does not dispute that he knowingly discharged a weapon on the night in question. *Cf. Wheaton v. State*, 129 S.W.3d 267, 273 (Tex. App.—Corpus Christi 2004, no pet.) (determining that evidence was sufficient to show that defendant knowingly discharged weapon, in part, because evidence showed that defendant and victim were arguing before shot was fired and that defendant later threatened victim and pointed weapon at her). Similarly, Chavez-Calderon does not argue that the evidence is insufficient to establish that

5

he acted recklessly as to whether Sanchez-Escalera's home was occupied. *Cf. Hernandez v. State*, No. 07-05-00345-CR, 2006 WL 684466, at *2 (Tex. App.—Amarillo Mar. 15, 2006, no pet.) (mem. op., not designated for publication) (concluding that evidence was sufficient to show that defendant acted recklessly with regard to whether building was occupied because evidence showed, in part, that "there were homes located within the range of [where] the shotgun . . . [was] used by appellant" and "that a nearby home was occupied by children and another home was occupied by a sick, disabled woman"). Instead, Chavez-Calderon argues that the evidence is insufficient to show that he discharged a firearm at or in the direction of one or more individuals or a habitation.

When presenting his argument on appeal, Chavez-Calderon refers to portions of Sanchez-Escalera's testimony in which she stated that he was waiving the gun and pointing it to the sky and urges that she did not testify that he "fired the gun at or in her direction or in the direction of her home." Moreover, Chavez-Calderon notes that there was no testimony at trial that any bullet holes were discovered in Sanchez-Escalera's home. Further, Chavez-Calderon argues that the security footage shows that he "fired the gun toward the sky" and away from Sanchez-Escalera and her home. In fact, Chavez-Calderon included in his appellant's brief "screen shots" purportedly taken from the security footage from Sanchez-Escalera's home that he insists show that he was pointing his gun up "toward the sky" when he fired the gun both times.[2]

---

[2] As support for his evidentiary challenge, Chavez-Calderon also notes that during their deliberations, the jury asked the district court to clarify whether the word "at" as included in the jury charge referred to the location where the defendant was when he shot the weapon or to "the direction of the discharge." Further, Chavez-Calderon points out that the district court's response did not answer the question and instead instructed the jury to "consider only the instructions that have been given you, and continue with your deliberations." In light of the preceding, Chavez-Calderon contends that the jury "wrongly decided that the word 'at' . . . referred to location, not

As an initial matter, we note that the State was not required to prove that the police discovered any bullet holes in Sanchez-Escalera's home during their investigation. *Cf. Wallace v. State*, No. 05-97-00878-CR, 1999 WL 504542, at *1, *2 (Tex. App.—Dallas July 19, 1999, no pet.) (not designated for publication) (overruling sufficiency challenge where police officer testified that he saw defendant shooting in direction of and toward apartment building even though officer admitted that he did not know if apartment "building had been hit by the bullets" and even though police report stated that "the investigating officers did not find any evidence of fresh bullet holes"). Moreover, the "screen shots" that Chavez-Calderon included in his brief were not admitted as exhibits at trial and, accordingly, were not shown to the jury. *Cf. Brown v. State*, 866 S.W.2d 675, 678 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (explaining that appellate courts should not consider material outside record that was improperly included in or attached to party's appellate brief). Additionally, although Chavez-Calderon urges in his brief that the screen shots capture the moments when he fired the gun and that the photos show that the gun was pointed to the sky, it is not readily apparent that the screen shots correspond to the times that he actually fired the gun.

In any event, although it is not clear from the security-camera footage precisely when Chavez-Calderon fired the gun, the footage shown to the jury chronicles him firing the weapon at least twice and further documents him moving the gun from above his head to a position parallel to the ground both times that he fired the weapon. The jury could have reasonably inferred from the footage that Chavez-Calderon fired the gun at least once when the

direction," and found him guilty because he was present at Sanchez-Escalera's home. However, Chavez-Calderon does not argue on appeal that there was any error in the jury charge. Moreover, as will be set out more thoroughly in the body of the opinion, we ultimately conclude that the evidence is legally sufficient to support a determination that Chavez-Calderon fired the gun toward Sanchez-Escalera's home and, thus, that he fired the gun "at or in the direction of . . . a habitation." *See* Tex. Penal Code § 22.05(b).

gun was not aimed at the sky and was instead fired when the gun was moving toward the ground and was pointing more to the right than up. *Cf. Gilbert*, 429 S.W.3d at 22 (explaining that "[w]hile the evidence at trial about Gilbert's location relative to the house was rather sparse, viewing the evidence in the light most favorable to the verdict requires that we assume the jury drew the opposite conclusion—that Gilbert was positioned slightly down the street, aiming his shotgun such that he was aiming toward the house, including its windows and adjacent porch where James was standing," noting that witnesses testified "that Gilbert fired in the direction of James," and concluding that there was sufficient evidence to support conviction). When assessing the direction in which Chavez-Calderon fired, the jury was aided by Sanchez-Escalera's testimony that she was on her front porch when Chavez-Calderon fired, the photographs showing that her home extends forward to the right of her porch, and the security footage depicting him approaching the home and shooting to his right.

In light of all of the evidence summarized above as well as the reasonable inferences that the factfinder could have made from that evidence and given our standard of review for legal-sufficiency challenges, we conclude that the evidence is legally sufficient to support a determination that Chavez-Calderon fired a gun at or in the direction of Sanchez-Escalera's home. *Cf. Meyers v. State*, No. 09-02-00315-CR, 2003 WL 1837710, at *1, *3 (Tex. App.—Beaumont Apr. 9, 2003, pet. ref'd) (not designated for publication) (determining that evidence was sufficient to support conviction for "the offense of deadly conduct by discharging a firearm in the direction of a habitation," in part, where evidence showed that defendant had been involved in fight outside victim's home "shortly before the shooting," that defendant was angry at victim for breaking up fight, and that defendant "said that he would return"). Having determined that the evidence is sufficient to support a determination that Chavez-Calderon shot

8

at or in the direction of Sanchez-Escalera's home, we need not address the sufficiency of the evidence pertaining to whether he shot at or in the direction of one or more individuals. *See* Tex. R. App. P. 47.1; *Guevara*, 152 S.W.3d at 52.

For these reasons, we overrule Chavez-Calderon's issue on appeal.

## CONCLUSION

Having overruled Chavez-Calderon's issue on appeal, we affirm the district court's judgment of conviction.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed:   October 18, 2019

Do Not Publish