

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-24-00134-CR

---

ALFRED REYNOLDS, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 22-F-00100-202

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

A Bowie County jury found Alfred Reynolds guilty of one count of the third-degree-felony offense of deadly conduct. *See* TEX. PENAL CODE ANN. § 22.05.[1] Based on the jury's assessment of punishment, the trial court sentenced Reynolds to ten years' imprisonment, with the sentence to run concurrently with his companion cases.

Via a single consolidated brief, Reynolds purports to appeal all four of his convictions.

In his sole issue on appeal, Reynolds contends that the trial court erred by denying his motion for a directed verdict. Reynolds contends that "[t]he evidence never showed that a gun was fired in the direction of two of the alleged victims." Specifically, Reynolds claims that he fired at the front-seat passenger of a vehicle, therefore, "none of the shots could have been fired 'at or in the direction of'' either of the two individuals in the back seat." The victim in the cause of action appealed here was one of the individuals, a child, in the backseat.

We find the evidence sufficient to support the conviction. We affirm.

## I.      Background

On the afternoon of January 21, 2022, Reynolds walked up to a sedan in the parking lot of a Texarkana apartment complex. Reynolds fired three rounds at close range, wounding the front passenger-seat occupant.

The front passenger-seat occupant was Gregory McDaniel. The vehicle was owned by McDaniel, but Kendria Moss was in the driver's seat. In the backseat were two of Moss's

---

[1]In his companion cause number 06-24-00131-CR, Reynolds appeals his conviction for aggravated assault with a deadly weapon. In companion cause numbers 06-24-00132-CR and 06-24-00133-CR, Reynolds also appeals two other convictions for deadly conduct.

children.  McDaniel had previously had a relationship with Moss.  After that relationship, Moss had a relationship with Reynolds.  Moss testified that she ended the relationship with Reynolds.  She testified that, beginning in 2021, Reynolds harassed her on several occasions.  Moss further testified that, on the morning of January 21, 2022, Reynolds called her to indicate that he was aware that McDaniel had been with her at her house the previous night, leading Moss to believe that Reynolds had been watching them.  Moss further testified that Reynolds attempted to break into her house and that Reynolds called yet again to make a death threat against everyone in her household.

When Reynolds approached the car on the afternoon of January 21, McDaniel, Moss, and the two children were waiting for a third child to be dropped off by a school bus.  Three of the vehicle occupants testified:  McDaniel, Moss, and one of the children.  Each identified Reynolds as the shooter.  Misty Tyler, a crime scene detective with the Texarkana, Arkansas, Police Department,[2] testified that three shots were fired into the area of the front passenger door of the vehicle.  One round lodged in the front passenger door.  The round that wounded McDaniel passed through him.  Tyler recovered neither that round nor the third round.

At the close of the State's case-in-chief, Reynolds moved for a directed verdict asserting that "all the gunshots were at one individual, Mr. McDaniel," therefore, "the only deadly conduct would be with [respect to] . . . Mr. McDaniel."  The trial court denied that motion.

The jury found Reynolds guilty on all four counts across Reynolds's companion cases and assessed punishment at twenty years' incarceration and a $5,000.00 fine on the aggravated

---

[2]Texarkana sits on the border of Arkansas and Texas.  On occasion, the Texarkana, Texas, Police Department and the Texarkana, Arkansas, Police Department coordinate their law enforcement efforts.

assault charge and ten years' incarceration on each of the three deadly conduct charges, including the one that is the subject of this appeal. The trial court rendered judgment based on the jury's verdict with the sentences on each offense to run concurrently.

Reynolds appeals.

## II. Standard of Review

"A motion for instructed verdict is essentially a trial level challenge to the sufficiency of the evidence." *Smith v. State*, 499 S.W.3d 1, 6 (Tex. Crim. App. 2016) (citing *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996)); *see Rhymes v. State*, 536 S.W.3d 85, 93 n.6 (Tex. App.—Texarkana 2017, pet. ref'd). "We assess legal sufficiency by viewing the evidence in the light most favorable to the verdict and asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bittick v. State*, 707 S.W.3d 366, 368 (Tex. Crim. App. 2024). This review encompasses "all the evidence, both State and defense." *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990); *see Smith v. State*, 109 S.W.3d 80, 81 (Tex. App.—Texarkana 2003, no pet.) ("[O]ur review of the sufficiency of the evidence is not limited to the evidence presented before an appellant's motion for instructed verdict is made at the end of the State's case-in-chief."). "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses, and juries may draw multiple reasonable inferences from the facts so long as each is supported by the evidence presented at trial." *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). "[W]e must keep in mind that a juror may choose to believe or disbelieve all, some, or none of the evidence presented." *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021).

## III. Substantive Law

The offense of "deadly conduct" proscribes the discharge of firearms under certain circumstances. *Lozano v. State*, 577 S.W.3d 275, 278 (Tex. App.—Houston [14th Dist.] 2019, no pet.); TEX. PENAL CODE ANN. § 22.05(b). Our sister court has perceived in those circumstances a desire by the Legislature to prohibit the discharge of firearms in a way that "puts others at risk." *Lozano*, 577 S.W.3d at 278. "[T]he allowable unit of prosecution for the offense of engaging in deadly conduct is each discharge of a firearm that occurs under the proscribed surrounding circumstances." *Id.* (citing *Miles v. State*, 259 S.W.3d 240, 249 (Tex. App.—Texarkana 2008, pet. ref'd)). One of those surrounding circumstances is the knowing discharge of a firearm "at or in the direction of . . . one or more individuals." TEX. PENAL CODE ANN. § 22.05(b)(1). "There is no requirement that the discharge come into contact with a person or thing." *Lozano*, 577 S.W.3d at 278. "[T]he statute as written does not even require a victim." *Id.* "The offense is completed whenever the defendant knowingly discharges a firearm 'at or in the direction of' a person or particular thing." *Id.*

"The Penal Code supplies no definitions to aid in the application of [S]ection 22.05(b)'s prohibition of discharging a firearm 'at or in the direction of' an individual." *Gilbert v. State*, 429 S.W.3d 19, 22 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *see, e.g.*, TEX. PENAL CODE ANN. §§ 1.07, 22.05. Thus, the jury was free to use the common understanding of the statute's words: "[w]hen analyzing the sufficiency of the evidence, undefined statutory terms 'are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance.'" *Dunham v. State*, 666

5

S.W.3d 477, 484 (Tex. Crim. App. 2023) (quoting *Clinton*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011); *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992)).

*Gilbert* involved arguments like those here:

> Gilbert's argument focuses on inconsistencies in the testimony and photographic evidence that shotgun pellets struck the front window farthest from the porch where [the victim] stood. He invokes "the principles of geometry and physics" to argue that the evidence shows that the porch must have been on his left while he shot to his right, hitting the right side of the house, and accordingly no rational jury could conclude that he discharged the weapon in the direction of [the victim]. While the evidence at trial about Gilbert's location relative to the house was rather sparse, viewing the evidence in the light most favorable to the verdict requires that we assume the jury drew the opposite conclusion—that Gilbert was positioned slightly down the street, aiming his shotgun such that he was aiming toward the house, including its windows and adjacent porch where [the victim] was standing.

*Gilbert*, 429 S.W.3d at 22.

Our own *Gilbert* case is also analogous: "a rational jury could find that shooting several times into the cab of a truck that the defendant knows is occupied by multiple people is clearly dangerous to human life." *Gilbert v. State*, 575 S.W.3d 848, 862 (Tex. App.—Texarkana 2019, pet. ref'd) (discussing "an act clearly dangerous to human life" under Section 19.02(b)(2) of the Texas Penal Code (quoting TEX. PENAL CODE ANN. § 19.02(b))).

## IV.    Analysis

The jury heard and rejected Reynolds's argument that he shot at McDaniel and, therefore, could not have shot "at or in the direction of" the children in the backseat. There was sufficient evidence for the jury to reject Reynolds's argument. Stated differently, there was sufficient evidence to support the convictions for deadly conduct regarding the children in the backseat.

6

McDaniel testified that he became aware of Reynolds's presence as he was finishing leaning into the backseat to help one of the children fasten his seat belt. McDaniel heard Reynolds shout, then Reynolds's weapon was in McDaniel's face. Bullets pass through flesh.[3] Bullets ricochet.[4] Consistent with the jury exercising the common understanding of "at or in the direction of," the jury could have concluded that any round fired into the vehicle had been fired "at or in the direction of" the children in the backseat.

## V.  Conclusion

For the reasons discussed above, we overrule Reynolds's sole issue. We affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:     March 3, 2025
Date Decided:      May 6, 2025

Do Not Publish

---

[3]Here, there are four convictions and three bullets. The bullet which wounded McDaniel passed through him. Thus, nothing from the realm of geometry and physics would preclude a bullet from causing bodily injury to one person but to nonetheless qualify as the unit of prosecution regarding deadly conduct regarding another person. *See Gilbert*, 429 S.W.3d at 22. Reynolds makes no argument that two convictions for the same bullet are legally precluded. *See Lozano*, 577 S.W.3d at 278 n.1 ("[Appellant] does not argue, and we need not address, whether [deadly conduct] is a lesser-included offense of aggravated assault with a deadly weapon, which would be the same offense for jeopardy purposes.").

[4]*See Smith v. State*, 286 S.W.3d 333, 343 (Tex. Crim. App. 2009) (discussing the risk of ricochet in the context of deadly conduct).

7